## Delia Toms, Administratrix, etc., Appellee, v. Johanna Ketterer, Appellant.

1. TRIAL—*when motion for directed verdict waived.* Defendant cannot complain of refusal to direct a verdict at the close of plaintiff's evidence, where she did not abide by her motion but introduced evidence in her own behalf.

2. TRIAL—*effect of motion for directed verdict at close of all evidence.* Defendant on motion for directed verdict at the close of all of the evidence had the right to question the propriety of the ruling thereon as the evidence then stood but not as it was at the close of plaintiff's evidence, at which time a motion for directed verdict had been denied.

3. MASTER AND SERVANT—*consent to driving of car by son as question for jury.* Whether defendant's son was driving her car with her consent at the time of a collision, held for the jury.

4. EVIDENCE—*common knowledge as to financial responsibility* It is a matter of common knowledge that thousands of automobiles are driven upon the public streets and highways by young people who are irresponsible, financially.

5. MASTER AND SERVANT—*child as agent of parent in operating car.* Where a parent permits his minor child to take out his automobile for the child's own pleasure and purposes, such child is the agent of the parent and the latter is liable for his negligence, the car being provided by the parent for the pleasure of the family.

Appeal by defendant from the City Court of East St. Louis; the Hon. WILLIAM F. BORDERS, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed February 9, 1925. Rehearing denied March 24, 1925. *Certiorari* denied by Supreme Court (making opinion final).

GEERS & GEERS, for appellant.

BEASLEY & ZULLEY, for appellee.

MR. JUSTICE BARRY delivered the opinion of the court.

On June 28, 1923, at about 10 p. m., appellee's intestate lost his life when the car he was driving was struck by appellant's car, then being driven by her 18-year-old son. Appellant had kept her car for three years for business and family use. She lived with her husband, her said son whose name is Harold and her two little girls. Her husband was engaged in selling butcher supplies and fixtures and used the car every day in his business but never drove it himself. The son was the only member of the family who could drive the car and he always drove for his father, and the family. That was the only work he did. At about 7:30 p. m. on the day in question the son took his father to the home of a Mr. Fitzgerald, about two miles from appellant's residence, for the purpose of trying to make a sale. The father says that when they reached the Fitzgerald home he asked Harold if he wanted to go in with him and the boy said, "No." That he then told him to stay there with the car until he came out; that after he had been in the house for two and one-half hours or more the boy came and told him of the accident. Harold says he was told to wait for his father but that he drove away in about ten minutes and went to a park where there was a dance and remained there for an hour and a half or more and while returning for his father the accident occurred.

The declaration is in the usual form but also avers that appellant kept the car for the pleasure, comfort, use and entertainment of the family. Appellant filed the general issue and two special pleas. The special pleas were to the effect that the car was not being used at the time of the accident by appellant, her agent or servant. The evidence shows it was kept for

business and family use. The trial resulted in a verdict and judgment for $5,000.

Appellant contends that the court erred in refusing to direct a verdict at the close of appellee's evidence and again at the close of all the evidence; that the verdict is contrary to the law and the evidence and is not supported by the evidence; that the court erred in denying the motion for new trial and in entering judgment on the verdict.

Appellant cannot complain of the action of the court in refusing to direct a verdict at the close of appellee's evidence because she did not abide by her motion. But as the motion was renewed, at the close of all the evidence, she had a right to question the propriety of the ruling thereon as the evidence then stood but not as it was when appellee first rested her case. So far as negligence and contributory negligence are concerned there was ample evidence to require the case to go to the jury and we cannot disturb the verdict as to those questions. The vital issue is whether there was evidence fairly tending to prove that Harold was acting as the agent or servant of appellant at the time in question.

Where the defense was made in a similar case the Supreme Court of Iowa said: "The particular defense interposed is one easily manufactured and difficult to meet. The complaining party necessarily must, in order to overcome such a claim, rely largely on the unreasonableness of the story, if it so appears, and its inconsistency, if it is so, when compared with all the facts and circumstances of the case." *Landry v. Oversen*, 187 Iowa 284, 174 N. W. 255.

Appellant's automobile was a 6-cylinder, 5-passenger car and weighed 2,800 or 3,000 pounds. She testified that she kept it for business and family use and that her son was the only member of the family who could drive it; that he did no other work; that her husband used the car every day in his business, but never took it without asking her if he could have it,

and that Harold always drove it for him because he could not drive; that when the car was used for pleasure Harold always drove it but the family went along; that Harold never, at any time, had her permission to take the car out on a mission of his own. She said: "We always told him he should not drive it without his father or I with him." In one breath she says that she did not tell Harold he could drive the car every time he drove; that she could not tell how many times he drove it when she had not told him he could. In the next breath she says that the night in question was the only time he drove it without her permission. She says that on the day of the accident she did not know where the car was or where Harold went although she learned later that the car had been out.

Her husband testified in her favor without objection. He said "the car was managed in the family under this condition,—the boy was never allowed to take this car out without her permission, or with her permission, without one of us was with him; the consequence is, there was always some one with him when he went out. If he had the car out alone either I was with him or I sent him on a particular errand. Harold would ask me or his mother if he could have permission to use the car; sometimes he would try to get permission from me and sometimes from his mother, like all boys." He also said : "I didn't ask Mrs. Ketterer every time I used the car; I feel that I didn't have to ask her every time I used the car. I am the head of the family. I used the car many times before the accident and since without asking Mrs. Ketterer; that went on for three years." He says that he used the car every day and many times a day; that he could not drive it and Harold always drove for him; that on the day of the accident Harold had driven him to other places.

Harold testified that his father did not know that he was going to take the car that night; that his father told him to wait until he came out; that he waited

about ten minutes and then drove to the park where there was dancing; that he had no permission from his father or mother to take the car on a mission of his own; that he never drove it for his own purpose without their permission; that his father authorized him to use it during business hours for business only; that he had the car out and used it the day of the accident; that he first took it about 8 or 9 in the morning and drove to Granite City to make some collections; that he did not drive the car to St. Louis that day that he knew of. He also said that he drove the car alone on the night of the accident but never before.

It is undisputed that Harold was the family chauffeur and had no other business. The car was never used except when driven by him as he was the only member of the family who could operate it. Whenever the father used the car Harold drove it. Appellant says that her husband never used the car without asking her if he might take it. He says he took it, frequently, without asking her and felt it was not necessary to ask her. When he took it without permission Harold was his driver and felt, no doubt, as his father did about the necessity of getting permission to use the car. Appellant first said that she did not tell Harold he could drive the car every time he drove it; that she could not tell how many times he drove it when she had not told him he could do so. She then said that the night in question was the only time Harold drove the car without her permission. Which statement should the jury believe? She says they always told Harold he was not to take the car unless she or the father was with him. The father says he sent Harold on errands and that he went alone. Harold says he had authority from his father to use the car during business hours but only for business purposes. He had no business except driving the car. What was meant by business hours? Was it during the hours the father transacted business? If

so, the father was so engaged when Harold drove to the park and when the accident occurred.

Appellant did not know the car had been taken out on the day of the accident, yet Harold drove it alone to Granite City in the morning and did not seem to know whether he took it to St. Louis. He also drove it that day for his father. The father says that Harold would sometimes ask each parent, first one and then the other, if he might use the car, but neither parent says that on any of those occasions permission was refused. A jury would know that human nature is such that a parent does not always refuse the request of a child. When the father sent Harold alone on errands with the car they were both violating appellant's rules.

When a father claimed that if his daughter had ever taken the car for a mission of her own it was without his knowledge and contrary to his instructions, the court said: "The story is certainly unlikely. Even though he may have forbidden her to operate the car without being accompanied by her parents, the order was more honored in breach than observance, and the jury might have found that, notwithstanding what he had said, he acquiesced in her use of the car, contrary to his command. What happened on the evening in question casts doubt on his story, for he was at the evening meal, as was she, and she took the automobile at 7:30 o'clock, drove past the place where her mother was calling and returned at a time when she must have known Oversen would ascertain that she had taken the car in defiance of his authority. * * * We are of the opinion that whether Mildred was operating the automobile with her father's consent, express or implied, was fairly for the jury to determine." *Landry v. Oversen,* 187 Iowa 284, 174 N. W. 255.

So in the case at bar it is quite evident that if appellant had any rules in regard to the operation of the car they were more honored in breach than observance

both by Harold and his father. If Harold always obeyed instructions why was it necessary, on the night in question, for the father to tell him to stay there with the car until he came out from Fitzgerald's? When Harold drove away he knew that his father might come out at any minute and find that he had gone in defiance of his authority. We are of the opinion that whether Harold was operating the car with his mother's consent, express or implied, was for the jury to determine and we would not be warranted in interfering with the verdict, if, under the law, it can be said that he was acting as the agent or servant of appellant at the time of the accident.

In *Arkin v. Page,* 287 Ill. 420, it was held, in a four to three opinion, that in an action for damages occasioned by the negligence of a minor son in driving his father's car on a mission of his own, the relation of master and servant was not established by the mere fact that the father had purchased the car for the pleasure of the family and had permitted the son to use it for his own pleasure. In *Graham v. Page,* 300 Ill. 40, it was held, without dissent, that it was the duty and business of a father to provide shoes for his minor daughter, and, when needed, to have them repaired. That if instead of the father taking her shoes to the shop for repair and getting them when repaired he permitted her to use the car for that purpose, she was, while so engaged, the agent of her father in performing his business and duty and with the means authorized by him.

In that case the court referred to the fact that in the case of *Doran v. Thomsen,* 76 N. J. L. 754, it was held that the father was not liable where his daughter was driving the car for her own pleasure and that of her friends who were with her when she negligently injured a person on the highway and that the same court in a later case held the father liable under similar circumstances, distinguishing it from the *Doran*

case, *supra,* because there were other members of the family in the car besides the driver. The court then said: "That does not appear to be a valid basis for distinction, but rather to indicate the court was not inclined to again approve the former decision. The weight of authority supports the liability of the owner of a car which is kept for family use and pleasure where an injury is negligently caused by it while driven by one of his children by his permission, and the reasoning of those cases seems sound and more in harmony with the principles of justice. We agree with the Supreme Court of Tennessee that where a father provides his family with an automobile for their pleasure, comfort and entertainment, 'the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained,' *King v. Smythe,* 140 Tenn. 217."

Such is the latest utterance of our Supreme Court upon the subject and it is in direct conflict with its former decision. We think the language used is not susceptible of any construction other than a clear expression of intention that the *Arkin* case, *supra,* would not be followed in the future. If such were not the intention we cannot understand why such a statement should have been made without a dissenting voice so soon after a majority of the court had reached the opposite conclusion. In the case of *King v. Smythe,* 140 Tenn. 217, which is cited with approval in the *Graham* case, *supra,* the car was being driven by an adult son, who was a member of the family, for his own pleasure when the accident occurred, and the court said: "If a father purchases an automobile for the pleasure and entertainment of his family, and, as Dr. Smythe did, gives his adult son, who is a member of his family, permission to use it for pleasure, except when needed by the father, it would seem perfectly

clear that the son is in the furtherance of this purpose of the father while driving the car for his own pleasure. It is immaterial whether the purpose of the father be called his business or not. The law of agency is not confined to business transactions. * * * As a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and when moving rapidly upon the streets of a populous city, it is dangerous to life and limb and must be operated with care. * * * A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. * * * We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent.''

It is a matter of common knowledge that thousands of cars are driven daily upon the public streets and highways by young people who are irresponsible, financially. It is an appalling fact that in the United States in the past year more than 16,000 deaths were caused by automobiles. The law applicable to the relation of principal and agent was established by the courts long before the automobile was dreamed of as a mode of conveyance. The controversies were usually in regard to business transactions and for that reason some courts have refused to extend the law to other than matters of a business nature. A parent is under no legal obligation to provide the family with an automobile for their pleasure, comfort and entertainment and yet a very large number have made such a provision. If a parent provides a car for that purpose and employs a chauffeur to operate it and a person is killed by reason of the negligence of the chauffeur while driving the car for the pleasure of a mem-

ber of the family all the courts would agree that the parent should be held responsible. If instead of providing a chauffeur the parent permits a member of the family to operate the car for the pleasure of that member it seems perfectly clear to us that the parent should be held for the negligence of the child while so operating the car. If it were true that the relation of principal and agent can exist only with reference to some business transaction it requires no stretch of the law or the judicial conscience to hold that when a parent makes it his business to provide a car for the pleasure of the family and permits a child to operate it for that purpose such child is an agent in the furtherance of that business while operating the car for its own pleasure.

Such a rule is in harmony with the principles of justice and is supported by the weight of authority as the court said in the *Graham* case, *supra*. Unless we have misinterpreted the language of the court in that case it is the law in this State. It is only by such a holding, as a general rule, that substantial justice may be attained. Believing as we do that the judgment is supported by the law and the evidence it is affirmed.

*Affirmed.*