(No. 12529.—Reversed and remanded.)

BEN H. ARKIN, Admr., Defendant in Error, *vs.* SETH H.
PAGE, Plaintiff in Error.

*Opinion filed April 15, 1919.*

1. NEGLIGENCE—*a parent is not necessarily liable for torts of minor child.* A parent is not liable for the tort of his minor child merely from the fact of their relationship.

2. SAME—*owner of an automobile is not liable for negligence of borrower.* An automobile is not so dangerous an agency as to make the owner liable for injuries caused by it to travelers on the highway regardless of the agency of the driver, and the owner of an automobile who merely permits another to use it for his own purposes is not liable for the negligence of the borrower in using the machine.

3. SAME—*when owner of automobile is not liable for negligent use by servant.* The owner of an automobile is not liable for an injury occasioned by the negligent use of the machine by his servant, if the servant was at the time at liberty from the service of his master and not engaged in doing his master's business but was pursuing his own interests exclusively.

4. SAME—*when owner of automobile is not liable for injury occasioned by the car when driven by his minor child.* Where a son twenty years of age takes his father's automobile and uses it by himself upon a mission of his own without the knowledge of the father, although the father knew the son had been in the habit of taking the car out and had made no objection, the father is not liable for an injury occasioned by the car on the public highway.

5. SAME—*relation of master and servant is not established by mere permissive use of automobile by minor child of owner.* In an action for damages for an injury occasioned by an automobile while being driven by the owner's minor son on a mission of his own, the relation of master and servant is not established by the mere fact that the purpose for which the father purchased the machine was the pleasure of the family and that he permitted his son to use it for his own pleasure.

CARTWRIGHT and FARMER, JJ., dissenting.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

LANDON & HOLT, (ROBERT N. HOLT, of counsel,) for plaintiff in error.

THOMAS D. NASH, and J. A. ARKIN, (MICHAEL J. AHERN, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

On June 24, 1914, Annie Marie Christiansen, a little girl three and a half years old, was run over by an automobile on one of the streets of the city of Chicago and received injuries from which she died. Her administrator brought suit to recover damages for her death against George J. Page, the driver of the car, and Seth H. Page, its owner. On the trial the plaintiff dismissed the action as to George J. Page and recovered a judgment for $1700 against Seth H. Page, who appealed to the Appellate Court, where the judgment was affirmed. Upon the petition of Seth H. Page a writ of *certiorari* was awarded, and the record has been brought to this court for review.

George J. Page is the son of Seth H. Page, and in June, 1914, was twenty years old. At the time of the accident he was on his way from his home to the Lewis Institute for the purpose of seeing if he could register in a course of study at the summer school. He was alone in the automobile, which he had taken from the garage at his home without telling anybody that he was going to take the car out or that he was going to the Lewis Institute. He had not talked with his father about going to the school or the question of paying tuition, which he expected to pay himself out of money of his own which he had in the bank. The automobile belonged to his father and was bought in 1911. The family consisted of the father and mother, the young man and his sister. George had learned to drive a car the year before the automobile was bought, and during the first year that his father owned the car he was the only

one of the family who drove it. Later both his father and sister learned to drive. In June, 1914, all the members of the family drove the car except the mother, and when she went out in it one of the other members of the family would drive. George had the whole mechanical care of the car. The father knew that George was in the habit of taking out the car, and though he had not said either that he might or might not take it out at any time he did not object to his taking it out, and it is to be inferred that George took the car whenever he wanted to, when it was not in use.

The defendant asked the court to instruct the jury to find a verdict in his favor, and it is argued that there is no evidence in the record of any negligence in the management of the car. Other questions also are argued, but the important question in the case is whether, assuming that negligence was shown in the driving of the machine, the plaintiff in error is liable for that negligence.

A parent is not liable for the tort of his minor child merely from the relationship. There is no evidence or claim that George J. Page was not a competent chauffeur. An automobile is not so dangerous an agency as to make the owner liable for injuries caused by it to travelers on the highway, regardless of the agency of the driver. (*Danforth* v. *Fisher*, 75 N. H. 111; *Steffen* v. *McNaughton*, 142 Wis. 49; *Jones* v. *Hoge*, 47 Wash. 663.) The owner of an automobile who merely permits another to use it for his own purposes is not liable for the negligence of the borrower in the use of the machine. (*Hartley* v. *Miller*, 165 Mich. 115.) The owner of an automobile is not liable for an injury occasioned by the negligent use of the machine by his servant if the servant was at the time at liberty from the service of his master and not engaged in doing his master's business but was pursuing his own interests exclusively. *Reilly* v. *Counable*, 214 N. Y. 586; *Slater* v. *Advance Thresher Co.* 97 Minn. 305.

The liability of Seth H. Page, if any, must rest upon the agency of George J. Page. Is the owner of an automobile, who has provided it for the use of his family for their pleasure, liable for an injury caused through the negligent driving of the automobile by a member of the family while using it for some personal purpose of his own? This question has arisen in many cases and the decisions of the courts have been directly contrary, though all agree that the liability, if any, must rest upon the relation of master and servant between the driver of the automobile and the owner,—that is, upon the fact that the driver of the automobile was at the time engaged in doing the owner's business. Those courts which have held the owner liable have done so on the theory that when a father has bought an automobile for the pleasure of the family he has made it his business to furnish entertainment for members of his family, and, therefore, when one of them was permitted to use the automobile, even for his own personal and sole pleasure, he was carrying out the purpose for which it was owned and so was using it in the owner's business, who was, therefore, the principal and liable for the agent's neglect. Such was the view of the Supreme Court of Washington in *Birch* v. *Abercrombie*, 74 Wash. 486, which holds that a daughter driving, for her own pleasure, her father's car, kept for the use of the family, is his servant, for whose negligence in operating the car he is liable. It was said that such use of the car was in furtherance of the very purpose for which the car was owned and was used by one of the persons by whom it was intended that purpose should be carried out, and that the car was in every just sense being used in the owner's business by his agent. "It seems too plain for cavil that a father who furnishes a vehicle for the customary conveyance of the members of his family makes their conveyance by that vehicle his affair,—that is, his business,—and anyone driving the vehicle for that purpose with his consent, express or implied, whether a mem-

ber of his family or another, is his agent. The fact that only one member of the family was in the vehicle at the time is in no sound sense a differentiating circumstance abrogating the agency. It was within the general purpose of the ownership that any member of the family should use it, and the agency is present in the use of it by one as well as by all. In this there is no similitude to the lending of a machine to another for such other's use and purpose unconnected with the general purpose for which the machine was owned and kept."

Other cases in which, under varying conditions, a parent has been held liable for the negligence of his child in the operation of the parent's car owned and used for the family convenience and pleasure are *McNeil* v. *McKain,* 33 Okla. 449; *Stowe* v. *Morris,* 147 Ky. 386; *Kayser* v. *VanNest,* 125 Minn. 277; *Davis* v. *Littlefield,* 97 S. C. 171; *Griffin* v. *Russell,* 144 Ga. 275; *King* v. *Smythe,* 140 Tenn. 217; *Crittenden* v. *Murphy,* (Cal.) 173 Pac. Rep. 595. In some of these cases the child was driving with other members of the family, so that the question is not exactly the same as that presented here and in *Birch* v. *Abercrombie, supra,* and the distinction is noticed in *McNeil* v. *McKain, supra,* where, in referring to the case of *Daily* v. *Maxwell,* 152 Mo. App. 415, which held that where a father purchases an automobile for the use of his family and their pleasure and his minor son uses the car for his own pleasure, having in it neither any members nor any guests of his father's family, the relation of master and servant exists in the operation of the car by the son for his own pleasure, the Supreme Court of Oklahoma says that it is not to be understood as approving the length to which the rule is extended in that case, since it was not essential to determine that question in order to dispose of the case before the Oklahoma court. The doctrine of *Daily* v. *Maxwell, supra,* and of other cases in the Missouri Court of Appeals, was later overruled by the Supreme Court of

Missouri in *Hays* v. *Hogan,* 273 Mo. 1, as unsound in principle and unsupported by the weight of authority, the court saying, that "after a careful consideration of all the authorities cited we have reached the same conclusion, and hold that the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family does not render him liable in damages to a third person for injuries sustained thereby through the negligence of his minor son while operating the same on a public highway in furtherance of his own business or pleasure, and the fact that he had his father's special or general permission to so use the car is wholly immaterial."

The cases cited by the defendant in error fully sustain the rules of law under which he claims the right to recover. On the other hand, there are many authorities which hold precisely the contrary. The doctrine announced in *Hays* v. *Hogan, supra,* which has just been quoted, is in accordance with the rules of law declared in *Doran* v. *Thomsen,* 76 N. J. L. 754; *VanBlaricom* v. *Dodgson,* 220 N. Y. 111; *Parker* v. *Wilson,* 179 Ala. 361; *McFarlane* v. *Winters,* 47 Utah, 598; *Blair* v. *Broadwater,* 121 Va. 301; *Loehr* v. *Abell,* 174 Mich. 590; *Cohen* v. *Meador,* 119 Va. 429; *Linville* v. *Nissen,* 162 N. C. 95.

It seems rather a fantastic notion that a son in using the family automobile to take a ride by himself for pure pleasure is the agent of his father in furnishing amusement for himself, is really carrying on his father's business, and that his father, as principal, should be liable for the result of the son's negligent manner of furnishing the entertainment to himself. It is said in the case of *Hays* v. *Hogan, supra,* that "the creation of the relation of master and servant should not be based upon the purpose which the parent has in mind in buying the automobile and the permissive use by a member of his family. One might keep an automobile for the use of the members of a club, the students of a certain school, the residents of a certain town

or for the general public, yet who will say, in case he permits such persons to use the machine and they injure a third party, that the relation of master and servant existed, and that in using the automobile for one of the purposes for which it was bought, the club man or the student or a member of the general public was in the business of the owner, and that he is therefore liable for their acts." The proposition announced is that a father, by the furnishing of the means of amusement to his family, has made their amusement his business, so that each member of the family, in using for his own personal enjoyment, upon his own initiative, any of the means so furnished, though engaged exclusively in the pursuit of his own peculiar ends, without the direction, control, advice, consent or knowledge of any other person, is still engaged, as agent, in carrying on the business of another. If the son is his father's agent to amuse himself with an automobile he must also be a like agent for his own amusement with bicycles, horses and buggies, guns, golf clubs, base balls and bats, row boats and motor and sail boats, if these should happen to be provided, and if, in carrying on his father's business by the use of any of these articles, as his father's agent, to amuse his father's son, he should negligently injure anyone, his father would be liable as principal. Such a refinement of reasoning has not been recognized until since the advent of the automobile or in the case of any other instrumentality. A parent who has permitted his child to have fire-arms or use horses for his own amusement has not been held liable for the child's negligence in using them as the father's agent. He has been held liable only for his own fault and not for the child's, and accordingly, where a son was driving a horse for his own amusement and not in his father's business, the father was not liable for his negligence. (*Brohl* v. *Lingeman,* 41 Mich. 711; *Maddox* v. *Brown,* 71 Me. 432.) Where one was injured by the negligent use of a gun by a child the parent was held liable, not for the child's

negligence but his own in permitting the gun to come into the possession of one who was incompetent to use it. *Meers* v. *McDowell*, 110 Ky. 926.

The relation of master and servant is not established by the mere fact that the purpose for which the father purchased the machine was the pleasure of the family and that he permitted his son to use it for his own pleasure. In *Doran* v. *Thomsen, supra,* an instruction was given which stated, substantially, that these facts would create the relation of master and servant, and the court, in commenting upon the instruction, said: "It bases the creation of the relation of master and servant upon the purpose which the parent had in mind in acquiring ownership of the vehicle and its permissive use by the child. The proposition ignores an essential element in the creation of that status as to third persons,—that such use must be in furtherance of, and not apart from, the master's service and control,—and fails to distinguish between a mere permission to use, and a use subject to the control of the master and connected with his affairs. The reason for liability is founded on the idea of control which a master has over his servant. The court, although attempting to rest the liability upon the relation of master and servant, yet actually tested the liability by the fact that she was entrusted with the operation of the machine for her own pleasure, if purchased for that object, whereby she *ipso facto* became a servant. So that the charge thus, in fact, left the legal relation of master and servant out of account and raised it in name, only, because the daughter was allowed to drive the machine. In this there was also error."

In *Parker* v. *Wilson, supra,* it is said: "The meager facts before us, though interpreted with favor to the appellant, present the case of a mere permissive use of the father's vehicle by the son for his own purposes of business or pleasure. On what principle can it be said, in this state of the case, that the son was the servant of the defendant

and acting within the course or scope of his employment? It seems clear that the ordinary rule of master and servant has no application to such a case, and prior to the advent of the automobile the contrary doctrine had no general currency in this country or England. * * * The doctrine contended for amounts to this: That the pleasure of the family, in its utmost detail, is the business of the father. As applied to the case at hand, it means that the son, in pursuit of his own pleasure with an automobile owned by his father, was engaged in the business of the father. But the doctrine, we think, has no firm foundation in reason or common sense. In theory it overlooks well settled principles of law; in practice it would interdict the father's generosity, and his reasonable care for the pleasure, or even the well being, of his children, by imposing a universal responsibility for their acts." Again it is said: "Automobiles are not to be classed with such highly dangerous agencies as dynamite or savage animals. They are not dangerous *per se*. Prudently driven, they are safer than the horse-drawn vehicle; but the special training needed for their operation, though simple and easily acquired, as well as the temptation to speed which they constantly present, should impose upon owners a special degree of care in the selection of experienced and judgmatic drivers for them. No doubt liability will arise where the owner entrusts a machine of such dangerous potentialities to the hands of an inexperienced or incompetent person, whether child or servant. In the case of a mere permissive use, the liability of the owner would rest not alone upon the fact of ownership but upon the combined negligence of the owner and driver,—negligence of the one in entrusting the machine to an incompetent driver; of the other, in its operation. No such case is presented by either the pleadings or the evidence shown in this record."

The new doctrine really seems to have its origin in the belief that there should be a distinction between an automo-

bile and other vehicles and instrumentalities, and a greater liability on the part of the owner because the danger arising from its negligent use is greater. Thus, in *Hays* v. *Hogan,* 180 Mo. App. 237, (which the Supreme Court later reversed,) the Missouri Court of Appeals, in affirming the judgment of the trial court, said: "We think that when an automobile * * * is being used by another member of the family than the owner, but with the owner's consent, that he should not be heard to say that such other is not his agent or servant. No dangerous rule is thus established but one in harmony with and conducive to the proper recognition of the legislative enactment." And in *Birch* v. *Abercrombie, supra,* it is said: "We think that both on reason and authority the daughter, in the present instance, should be held to be the servant of her parent in the use of the automobile. Any other view would set a premium upon the failure of the owner to employ a competent chauffeur to drive the automobile kept for the use of the members of his family, even if he knew that they were grossly incompetent to operate it themselves. The adoption of a doctrine so callously technical would be little short of calamitous." So in *Crittenden* v. *Murphy, supra,* it is said, after a quotation from *Birch* v. *Abercrombie, supra:* "We are satisfied that the rule thus laid down is the correct one, not only because of the fact that the use of the machine by the son for his own pleasure was contemplated when it was purchased, but also because of the very nature of the automobile itself. While it is true that the automobile is not, in itself, a dangerous instrumentality, nevertheless it demands a very high degree of care and skill in its management upon the highway, and it must be recognized that in the hands of an incompetent or reckless youth it has immense potentialities for harm to others."

In *King* v. *Smythe, supra,* the Supreme Court of Tennessee, said: "It is true that an automobile is not a dangerous instrumentality so as to make the owner liable, as

in the case of a wild animal loose on the streets; but, as a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and when moving rapidly upon the streets of a populous city it is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father for the family's pleasure, comfort and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to persons and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities. An automobile cannot be compared with golf sticks and other small articles bought for the pleasure of the family. They are not used on public highways and are not of the same nature as automobiles." This argument may be sound enough, but it has no application to the doctrine of master and servant.

The instruction to find a verdict for the defendant should have been given.

The judgments of the Appellate Court and of the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

CARTWRIGHT, FARMER and CARTER, JJ., dissenting:

The opinion adopted by the majority is contrary to the weight of authority, as perhaps is sufficiently apparent from the opinion. In 20 R. C. L. 629, the conclusion of the courts on the question is stated as follows: "Where the parent purchases an automobile for the use of his family, a child using it for his own pleasure is held by the weight of authority to be the servant of his parent in doing so, and if in the course of his travels he negligently manipulates the machine the act is within the scope of his employment." The same doctrine is stated in Berry on Automobiles (sec. 653): "The rule is followed in most of the States in which the question has been decided, that one who keeps an automobile for the pleasure and convenience of himself and his family is liable for the injuries caused by the negligent operation of the machine while it is being used for the pleasure or convenience of a member of his family." In Babbitt on Motor Vehicles (Blakemore, 2d ed. sec. 902,) the same rule is stated: "There is a class of cases where the head of a family buys an automobile for the use and pleasure of his family, and the courts incline to hold that when a car bought for family use is used for that purpose the owner is liable for negligence in its operation,"—and this is followed by cases supporting the doctrine. In section 903 of the same work it is said the weight of authority now is that when a father provides an automobile for the pleasure of his child he is liable for the child's negligence in running the car, with this statement: "If a father owns an automobile and permits his son to run it, the son is, as

a matter of law, his agent,"—citing *Winn* v. *Holliday,* 109 Miss. 691, in which case a son of the owner was driving an automobile, accompanied by his brother and friends, on his way to a ball game.

We see nothing fantastic in these statements of the relation between the owner of an automobile furnished for general family use and a member of the family operating it in the authorized use, nor in the decisions of many courts to the same effect. The relation is not based upon the purpose which the parent has in mind in buying the automobile but upon the authorized application to the family use, and there is no similarity whatever between providing an automobile for the use of the owner's family and keeping one for use of a club, school or general public, between whom and the owner there is no relation or obligation to furnish an automobile or anything else. Neither is there any ground for comparison between furnishing golf clubs, base balls and bats, or the like, to be used on private grounds, and furnishing an engine-driven car to be used on the public streets and highways, where the owner must anticipate that negligence in operation may produce the most serious results.

The leading case in support of the opinion adopted in this case is *Doran* v. *Thomsen,* 76 N. J. L. 754, which is generally cited by the courts adopting the same theory, but in *Missell* v. *Hayes,* 86 N. J. L. 348, the court stated rules at variance with the former decision. In the later case the question was one of agency, where the son was driving his father's automobile with his mother and sister and guests. and the court said: "It was within the scope of the father's business to furnish his wife and daughter, who were living with him as members of his immediate family, with outdoor recreation, just the same as it was his business to furnish them with food and clothing or to minister to their health in other ways." The refusal of the trial court to direct a verdict against the plaintiff was approved and judg-

ment affirmed. The court said that the relation of principal and agent may be either expressed or implied, and the real question is whether the act is done with the assent of the person charged, whether expressed or implied. The court saw some ground of difference between that case and the former one, but declared that the operation of an automobile furnished by a parent for the use of his family is his business and the authority to use it may be either expressed or implied.

There is no possible ground of difference concerning liability whether there is one member of the family in the automobile or the whole family. If it is within the scope of a father's business to furnish members of his family with an automobile for family use just the same as it is his business to furnish them with food and clothing or to minister to their health in other ways, it was just as much the business of the plaintiff in error, when his son drove the automobile for his convenience, as if all the family had been riding in it. The only ground upon which it can be said that he was not liable for negligence in the operation of the automobile would be that it was none of his affair, which is not only contrary to the weight of authority but against the public interest and natural justice. It is not contended that the liability arises out of the mere fact of the relation of parent and child or upon the duty of a parent to furnish an automobile for the use of the members of his family, but it rests on the doctrine of agency, which is not confined to commercial business transactions and which arises from the fact of the parent furnishing an automobile for family use, with a general authority, expressed or implied, that it may be used for the pleasure, comfort and entertainment or outdoor recreation of members of the family. The correct doctrine has been stated and applied in numerous cases under conditions similar to those shown by the record in this case. *Stowe* v. *Morris*, 147 Ky. 386; *Ploetz* v. *Holt*, 124 Minn. 169; *Kayser* v. *VanNest*, 125

287 – 28

id. 277; *McNeal* v. *McKain,* 33 Okla. 449; *Birch* v. *Abercrombie,* 74 Wash. 486; *Smith* v. *Jordan,* 211 Mass. 269; *Griffin* v. *Russell,* 144 Ga. 275; *King* v. *Smythe,* 140 Tenn. 217; *Crittenden* v. *Murphy,* (Cal.) 173 Pac. Rep. 595.