(No. 20275.— )
JUDSON WHITE, Defendant in Error, *vs.* WINFIELD SEITZ,
Plaintiff in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 4, 1931.*

W. JOE HILL, and MOSES PULVERMAN, (W. S. WILL-
HITE, of counsel,) for plaintiff in error.

P. J. KOLB, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Judson White, a minor, suing by his next friend, M. J. White, recovered a judgment for $5000 in the circuit court of Wabash county against Winfield Seitz, which the Appellate Court for the Fourth District affirmed. The record has been certified to this court in compliance with a writ of *certiorari* allowed on the petition of the defendant.

The declaration contained a single count, which alleged that the defendant owned an automobile; that he was about forty years old, and his family, consisting of himself, his wife and a minor son, J. D. Seitz, seventeen years old, lived together in one household; that the defendant had purchased an automobile, which he kept for the pleasure and comfort of himself, his wife and his son, and he authorized and permitted his son to drive it for the pleasure and comfort of the defendant and his wife and son; that while the son was driving the automobile on June 1, 1928, for his own pleasure and for one of the purposes for which it was kept and maintained, and with the consent, knowledge and permission of the defendant, the son, acting as the agent for the defendant, while the plaintiff was riding in the automobile as a guest and in the exercise of due care and caution for his own safety, negligently and recklessly drove the automobile at the dangerous and excessive speed of forty-five miles an hour around a sharp curve and wrecked it, causing injuries to the plaintiff, for which recovery is sought in this suit. A demurrer to the declaration was overruled, and the defendant pleaded the general issue and special pleas that the defendant was not the owner and in possession of the automobile; that the automobile was not being driven, controlled and operated by the defendant's agent; that the automobile was not being driven and oper-

ated by the defendant's agent with his consent, knowledge or permission or within the purpose for which the defendant purchased and kept it, and that the plaintiff was not riding in the automobile as the guest of the defendant. The issues were joined and tried by a jury. The defendant introduced no evidence but at the close of the evidence for the plaintiff moved the court to instruct the jury to find the defendant not guilty. The motion was denied and the jury returned a verdict of guilty, assessing the plaintiff's damages at $5000. The defendant's motion for a new trial being overruled, judgment was entered on the verdict.

The facts are undisputed. The defendant, his wife and their seventeen-year-old son constituted a family living together in Mt. Carmel. The father owned an automobile which was used by the family for pleasure. The son had general permission to use the car and was using it on June 1, 1928. He and Judson White were schoolmates in the high school. They completed the sophomore year together on May 31, and the next day, in the afternoon, White saw Seitz at the corner of Sixth and Main streets driving north in the car. White testified that he yelled at him and asked if he could ride with him and where was he going. Seitz answered that he wasn't going any place and it would be all right if White went with him. White got in the car and they rode around town and then started out East Fifth street toward the dam across the Wabash river. In making the turn from Fifth street into Riverside drive, which intersects Fifth street at right angles, Seitz drove the car going at the rate of forty-five miles an hour, ran into a tree at the edge of the roadway, and White was thrown out of the car and seriously injured.

The question which this record presents for decision is whether a father who has provided an automobile for the use of his family is liable for damages caused by its negligent operation by his minor son, who was using it for his own pleasure with his father's consent. We answered that

question in the negative in *Arkin* v. *Page,* 287 Ill. 420. We held in that case, in accordance with the universal rule of the common law, that a father is not liable for the tort of his minor child merely from the relationship, and that the liability of the father for an injury caused by his son's negligent operation of the father's automobile could rest only on the agency of the son, and though the decisions of the courts on this question have been in direct conflict, all courts agree that the liability, if any, must rest upon the relation of master and servant between the driver of the automobile and the owner. We held that an automobile is not so dangerous an agency as to make the owner liable for injuries caused by it and is not dangerous *per se,* and this is in accord with the general view. We repudiated the doctrine that the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family renders him liable in damages to a third person for injuries sustained through the negligence of his minor son while operating the automobile on a public highway in pursuit of his own business or pleasure, whether with or without his father's permission, and we held that an instruction to find a verdict for the defendant should have been given. Unless that case was decided wrongly this judgment must be reversed. In that case the son was operating the automobile on an affair of his own when the accident occurred for which it was sought to hold his father liable and we held there was no liability.

In *Graham* v. *Page,* 300 Ill. 40, the question of a father's liability again came before us under different circumstances. The driver of the car was a sixteen-year-old daughter going on an errand to get a pair of shoes which she had left to be repaired. The repair of the shoes was the business of the father upon which she was going to the cobbler's, using her father's automobile with his consent, and by this fact the relation of agency of the driver of the car to the owner was regarded as shown and the case distinguished

from *Arkin* v. *Page, supra.* It was held that the liability rested on the principle of agency and not the relation of parent and child and that the facts clearly distinguished the case from the *Arkin case.* The court said *obiter:* "The weight of authority supports the liability of the owner of a car which is kept for family use and pleasure where an injury is negligently caused by it while driven by one of his children by his permission, and the reasoning of those cases seems sound and more in harmony with the principles of justice. We agree with the Supreme Court of Tennessee that where a father provides his family with an automobile for their pleasure, comfort and entertainment, 'the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained.'—*King* v. *Smythe,* 140 Tenn. 217." This statement and quotation are somewhat at variance with the declaration that the liability rests upon the principle of agency, for it rests responsibility for negligent operation on dictates of natural justice, which have nothing to do with the principles of agency. A judicial opinion, however, like a judgment, must be read as applicable only to the facts involved and is an authority only for what is actually decided. (*Rolfe* v. *Hewitt,* 227 N. Y. 486.) The statement, therefore, can not be regarded as throwing doubt on the *Arkin case,* which is said to be clearly distinguished.

The case of *Gates* v. *Mader,* 316 Ill. 313, was similar in some respects to the two previous cases. The case has little resemblance to the *Arkin case,* which it says is not controlling. The driver in that case was not a member of the family or a minor. He was an adult son not living with his parents but employed and living elsewhere, who visited his parents about once a week. The evening before the accident he had come to his parents' home. His mother had made a luncheon engagement, including her two daughters and a niece, a friend and her daughter, for the next day

at some distance from her home and intended taking the party in the automobile. The son agreed to drive the party in the car to the luncheon and on the way the accident happened. The case differs, it will be seen, in material respects from both *Arkin* v. *Page* and *Graham* v. *Page,* as appears from the opinion. The decision is based not on the family car or "family purpose" doctrine, though the opinion discusses that doctrine, but is finally placed upon the relation of master and servant, the court saying: "If defendant had himself been driving it could not be denied he would have been liable for negligent injury, and the decided weight of authority, we think, makes him liable, under the evidence in this case, for the negligence of the son." The fact that the driver was the defendant's son or that the car had been purchased for the use of the family was not a factor in fixing the defendant's liability, which would have been the same had the driver been a hired chauffeur. The fact that the mother asked him to drive the car instead of hiring another driver was immaterial in fixing the defendant's liability.

These three are the cases which announce the law in this State, and they establish these propositions: That a parent is not liable for the tort of his minor child merely from the relation; that the owner of an automobile who merely permits another to use it for his own purposes is not liable for the negligence of the person so using it; that the owner of an automobile is not liable for an injury occasioned by the negligent use of the machine by his servant if the servant was at the time at liberty from the service of his master and not engaged in doing his master's business but was pursuing his own interests exclusively; and that the relation of master and servant is not established between the owner of an automobile and his minor son by the mere fact that the father purchased the machine for the pleasure of the family and that he permitted his son to use it for his own pleasure.

There had been, and still was, much conflict in the decisions of the courts of different States on the questions involved in what has come to be known as the "family purpose" doctrine in regard to automobiles at the time the *Arkin case* was decided at the April term, 1919, as is indicated by the two opinions in that case, and there was also some difference of opinion as to where the weight of authority lay, as the opinions also indicate. Since that time numerous decisions have been made in many States on the questions which have arisen in a great variety of cases on different states of fact. It can hardly be said that the result has been to clarify the situation. The weight of authority is like the weight of evidence, and is no more to be determined by the number of decisions one way or another, without regard to the quality of the reasoning, than the weight of evidence is to be determined by the number of witnesses, alone. On one thing the decisions seem to be agreed—the principle that liability for the tort cannot be based upon the relation of parent and child. But in some cases, if not many, the statement of the principle is accompanied by an argument based on the greater danger involved in the use of the automobile than of other means of transportation, its excessive weight, its possible speed, the difficulty of collecting the judgment of minors or others whom the owner may have permitted to use the machine, and it has been suggested that the dictates of natural justice require that the owner of an automobile should be responsible for its negligent operation, because only by so doing, as a general rule, can substantial justice be attained, and that the practical administration of justice between the parties is more the duty of the courts than the preservation of some esoteric theory concerning the law of principal and agent. Of course, this is a frank and complete abandonment of the relation of master and servant as the basis of liability of the owner of an automobile driven by another by the owner's permission, and it seems to be an abandonment of

the principle of the administration of justice between man and man according to the orderly process of the law regulated by established rules, esoteric or otherwise. The use of the automobile on public highways is subject to the police power of the State, which has been exercised in this State by the passage of the Motor Vehicle act and other acts. That power, however, is legislative and not to be exercised by the courts. The reasoning of some of the opinions in this connection seems appropriate enough for consideration in relation to proposed legislative action but not as the basis of a declaration of a new rule governing judicial action.

In the *Arkin case* the driver of the car was a minor son of the defendant using the car exclusively for his own purposes of pleasure or business but not for his father in any way and the father was held not liable for his negligence. There is a conflict among the decisions on this question. A discussion, case by case, of cases on the one question involved here—the liability of the owner of an automobile for damages caused by its negligent operation by his minor son using it merely for his own pleasure with his father's consent—would produce an interminable opinion to no good purpose. The arguments have been stated, the conclusion heretofore announced by this court is clear, and no new reason appears which should induce a change of view.

Two recent cases in which the Supreme Courts of two States have considered this question and arrived at opposite conclusions have been reported in the American Law Reports and made the subject of a very full annotation, which appears to include all the decided cases. They are *Smith* v. *Callahan,* 144 Atl. 46, 64 A. L. R. 830, decided by the Supreme Court of Delaware, and *Watson* v. *Burley,* 105 W. Va. 416, 64 A. L. R. 839. The note follows the report of these two cases, beginning on page 844. There is a greater volume of decided cases than when the *Arkin case* was decided but the conflict of opinion is no less. We

274

considered in that case all the arguments presented and we have reconsidered them in the light of the cases since decided. We adhere to the views there expressed, and the judgments of the circuit and Appellate Courts are reversed.

*Judgment reversed.*