(No. 19279.—

SELMA ANDERSEN, Defendant in Error, *vs.* E. P. BYRNES, Plaintiff in Error.

*Opinion filed April 23, 1931—Rehearing denied June 3, 1931.*

KIRKLAND, FLEMING, GREEN & MARTIN, (DAVID JACKER, JOSEPH H. PLECK, and WILLIAM H. SYMMES, of counsel,) for plaintiff in error.

FINN & MILLER, (FRANK JOHNSTON, JR., of counsel,) for defendant in error.

Per CURIAM: Defendant in error, Selma Andersen, (herein referred to as plaintiff,) recovered a judgment for $12,000 in the superior court of Cook county against plaintiff in error, E. P. Byrnes, (herein referred to as defendant,) on account of personal injuries sustained by her in a collision between an automobile driven by her and an automobile owned by defendant and driven by his minor son. The judgment was affirmed by the Appellate Court, and the cause comes to this court on a writ of *certiorari.*

About 10:30 P. M. on September 25, 1925, plaintiff, a woman over fifty years of age, accompanied by Nina Mahrenholz, was driving south on Glenwood avenue, in the city of Chicago, in a Ford automobile. Philip Byrnes, the

seventeen-year-old son of defendant, accompanied by five other young people, was driving a Packard automobile, owned by defendant, west on Balmoral avenue. At the intersection of Glenwood avenue and Balmoral avenue the two automobiles collided and plaintiff sustained personal injuries. Each of these streets was thirty-one feet wide from curb to curb. At the northeast corner of the intersection of the streets stood a three-story apartment building, eighty feet long east and west, and east of this building was a private driveway, seven and one-half feet wide. It was eighteen feet from the curb of Glenwood avenue and twenty feet from the curb of Balmoral avenue to the apartment building. There were lights at the northeast and southwest corners of the street intersection, covered by white globes, with the word "Stop" in red letters thereon on the sides facing east and west on Balmoral avenue. There were no such lights at the northwest and southeast corners of the intersection. The collision occurred near the center of the intersection. The right front fender of defendant's car struck the left front fender of the Ford and knocked that car into the parkway at the southwest corner of the intersection. There was evidence tending to show that the pavement was sweating, or moist; that the brakes on defendant's automobile were applied at the private driveway; that the noise of the brakes and the skidding of the car was so loud that it attracted the attention of persons in the vicinity and of a police officer who was a block away. Defendant's car left two skid-marks extending from near the private driveway to the place of the collision. Two witnesses for plaintiff testified that before the brakes were applied defendant's car was going forty to forty-five miles an hour, one witness that it was going thirty-five to forty miles an hour, sliding, after the brakes were applied, and one witness that it was going fifteen to twenty miles an hour at the edge of Glenwood avenue, with the brakes on. Three witnesses who were riding with defendant's son in the Packard

car testified that it was going between twenty and twenty-five miles an hour before the brakes were applied. Defendant also introduced evidence tending to show that the light at the northeast corner of the street intersection was obstructed from the view of one approaching the intersection from the east on Balmoral avenue by a tree standing near the light. Defendant's son testified, in substance, as follows: He was driving along Balmoral avenue at a speed between twenty and twenty-five miles an hour. When about seventy-five feet east of Glenwood avenue he applied his brakes lightly and slowed down to about twenty miles an hour, and when he was about fifteen feet from the corner he saw the Ford car driven by plaintiff proceeding south at about fifteen miles an hour. He applied his brakes again and turned to the left in an attempt to avoid the collision. He did not stop the Packard car before entering the street intersection.

The declaration is in five counts. The first alleges negligence generally. The second charges that defendant by his servant and agent willfully and wantonly propelled his automobile at such a high rate of speed as to exhibit an entire absence of care for the safety of others, and that he knew, or should have known, that the probable result of such conduct would be to inflict injury upon persons lawfully on the highway. The third charges that defendant had notice of plaintiff's danger and by his servant and agent willfully and wantonly propelled his automobile against the car operated by plaintiff. The fourth count alleges that defendant drove his automobile at a rate of speed greater than was reasonable and proper, contrary to the statute; and the fifth, that defendant failed to give the right of way to plaintiff at the intersection, contrary to the provisions of the statute. Defendant filed a plea of the general issue and a special plea that he did not manage, operate or control the automobile. In answer to a special interrogatory the jury found that the conduct of defendant was of a reckless

character, such as to exhibit an utter disregard for the safety and lives of other persons.

After the collision plaintiff was taken to the office of her physician, Dr. Harry V. Gould, and later to a hospital, where she remained for two weeks and three days. After leaving the hospital she was in bed at her home for three months, where she was attended by her physician until December 2, 1925. The evidence shows that she was very seriously injured. She suffered a fracture of the radius of the right arm just below the elbow and had very marked pain and tenderness over the tenth rib of the left side in the axillary line. She suffered from the collision a compound skull fracture just over the left eye-brow. The skin was broken at that point, and upon the flap of the skin being lifted there was revealed through a hole in the skull about five-eighths of an inch in diameter, the covering of the brain. While in the hospital she was confused mentally, suffered from pain in the right elbow and over the tenth left rib, and from headache. There was loss of sensation on the left side of her scalp. After the first two weeks she seemed to become very nervous, which manifested itself by a marked tremor and depression—almost melancholia. When her physician aforesaid ceased treating her on December 2, 1925, the tremor was then present very markedly. Two other physicians testified that this tremor condition of her body was visible at all times but was much more manifest when plaintiff was under excitement and when she was exerting herself, and that in their judgment that condition was a permanent one. One of them testified that the only possibility of relieving it would be to remove some of the skull, and that he was not sure that that would relieve it.

It was contended by the defendant that he was not liable for the negligence of his son in driving the automobile though the latter was driving the car for his own pleasure with his father's permission. We had occasion to consider the liability of the parent for a child's negligence under such

circumstances in the very recent case of *White* v. *Seitz*, 342 Ill. 266, in which we referred to our previous decisions in *Arkin* v. *Page*, 287 Ill. 420, *Graham* v. *Page*, 300 id. 40, and *Gates* v. *Mader*, 316 id. 313, in all of which the question of the parent's liability arose on facts similar in some respects to those presented here. In *Arkin* v. *Page, supra,* the father had bought the car for the use of his family for their pleasure, and the son by his negligent driving of the car, as the jury found by their verdict, while using it for a purpose of his own with his father's consent, ran over a little girl, the plaintiff's daughter, injuring her so that she died. We held that the father was not liable for the son's negligence under such circumstances and the jury should have have been instructed to find the defendant not guilty. The opinion did not receive the assent of all the members of the court, the minority filing a vigorous dissenting opinion. Two years later *Graham* v. *Page, supra,* followed, which was similar to the first in some respects but was different in the circumstance that the driver of the car, the defendant's sixteen-year-old daughter, was driving it on what was regarded by the court as a family errand, and the facts, the court said, clearly distinguished that case from *Arkin* v. *Page.* The liability was distinctly held not to rest on the relation of parent and child but on that of master and servant or principal and agent, and the case was distinguished from the *Arkin case* by the fact that in the latter the son was using the car solely for his own purpose, while in the other the daughter was using it for a family purpose, which was her father's business.

The case of *Gates* v. *Mader, supra,* differed in its circumstances from both the preceding cases and is in the opinion expressly distinguished from the *Arkin case.* The driver of the car, it is true, was the son of the defendant, but he was an adult not living in his father's family. He drove the car pursuant to an arrangement his mother had made with him the evening before to drive her and some

companions to meet a luncheon engagement and on the way to the luncheon the accident happened. While the "family purpose" doctrine is mentioned in the opinion the decision is based on the relation of master and servant. In referring to this case it was said in *White* v. *Seitz, supra:* "The fact that the driver was the defendant's son or that the car had been purchased for the use of the family was not a factor in fixing the defendant's liability, which would have been the same had the driver been a hired chauffeur."

The conclusion of the court in *White* v. *Seitz, supra,* after considering all these decisions, was expressed in this language on page 271: "That a parent is not liable for the tort of his minor child merely from the relation; that the owner of an automobile who merely permits another to use it for his own purposes is not liable for the negligence of the person so using it; that the owner of an automobile is not liable for an injury occasioned by the negligent use of the machine by his servant if the servant was at the time at liberty from the service of his master and not engaged in doing his master's business but was pursuing his own interests exclusively, and that the relation of master and servant is not established between the owner of an automobile and his minor son by the mere fact that the father purchased the machine for the pleasure of the family and that he permitted his son to use it for his own pleasure." The doctrine known as the "family purpose" doctrine, in the courts which follow it, is not the law in Illinois. Under the rules thus announced there is no liability on the part of the plaintiff in error.

The judgments of the Appellate Court and the superior court are therefore reversed. *Judgments reversed.*