KAREN L. STELLMACH *et al.*, Indiv. and as Next Friends of Justin Stellmach, *et al.*, Minors, Plaintiffs-Appellants, v. DEVOLA R. OLSON *et al.*, Defendants-Appellees.

Second District   No. 2—92—0472

Opinion filed March 17, 1993.

Anthony J. Pankau, Jr., of Law Office of John Pankau, and Schirott & Hervas, P.C., both of Itasca, for appellants.

John J. McCluskey, Jr., of Kalinich, McCluskey, Sullivan & Boylan, P.C., of Glen Ellyn, and Paul J. Bargiel, of Chicago, for appellees.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Karen and Gregg Stellmach, appeal a grant of summary judgment for defendants, Devola and Vincent Olson, in a negligence suit. Karen Stellmach was injured when her car was struck by a car owned by defendants but driven by Philip Olson, defendants' adult son, who was traveling alone to defendants' home. Philip Olson was killed in the accident.

Plaintiffs' first amended complaint alleged that the accident was the result of defendants' negligent entrustment of their car to their son, whom they knew to have a drinking problem. Plaintiffs sued two other parties, one of whom plaintiffs later voluntarily dismissed. Defendants and the third party received summary judgment. Plaintiffs did not appeal.

Plaintiffs' second amended complaint alleged defendants were liable under *respondeat superior* for Philip Olson's negligence. The trial court dismissed the complaint for failure to state a cause of action (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). This court reversed. *Stellmach v. Olson* (2d Dist. 1991), No. 2—90—1132 (unpublished order under Supreme Court Rule 23).

On remand, defendants moved for summary judgment, arguing that plaintiffs had not raised a genuine factual issue of whether Philip Olson was defendants' agent at the time of the accident. The trial court granted defendants summary judgment. Plaintiffs appeal, arguing that the court erred in finding that plaintiffs did not raise a genuine issue regarding whether defendants' son was acting as their agent at the time of the accident. We set out the relevant pleadings and evidence before the trial court.

Plaintiffs' second amended complaint alleged that on the evening of November 8, 1988, Philip Olson removed defendants' Buick from their residence. The next day, he told defendants by telephone that he had borrowed the car. Defendants told him to return the car to defendants' Lombard home after he had concluded his day's business and to come to their home for dinner. At about 5:40 p.m. on November 9, 1988, Philip Olson drove the Buick south on Swift Road, where

he collided with plaintiffs' car. His negligence was the sole proximate cause of Karen Stellmach's injuries. Plaintiffs further alleged that defendants were liable for Philip Olson's negligence because he was their agent.

In her deposition, Devola Olson testified that Philip Olson, born in 1953, lived with defendants until about October 1988. Philip had keys to defendants' house, and he would have known where defendants kept their keys to the Buick. However, he himself did not have keys to the Buick. The Buick was one of two cars defendants owned and kept at home. Defendants never gave Philip permission to borrow either car.

Mrs. Olson knew that, in 1976, Philip had been arrested for driving under the influence of alcohol. At the time of the accident, she was unaware that Philip's driver's license had been revoked or that he had a license issued under a different name.

After Philip moved out, he and defendants spoke on the telephone about twice a week. Philip routinely visited defendants on Wednesdays for supper.

On Tuesday, November 8, 1988, defendants went to dinner with friends. They left the Buick in the garage and drove the other car, leaving the house empty. Returning at 11:30 p.m., they saw that the Buick was gone. A note from Philip explained that his car would not start, so he had driven the Buick home.

On Wednesday, November 9, 1988, at about 4:30 p.m., Philip telephoned defendants. He related that he had just come home from court to help settle a dispute between the Olsons and another party. He added that he would be coming to dinner soon. Mrs. Olson testified that she told Philip, " 'you better get back here as fast as you can because you're not supposed to be driving that car.' " Philip replied, " 'I'll get it right back there.' "

Vincent Olson testified that at the time of the accident he was not aware that Philip Olson's driver's license had been revoked or that Philip had a license issued under a different name. At about 4:30 p.m. on November 9, 1988, Philip Olson called defendants. He told them he had been in court and that their case had been settled. He added that he would be over for dinner that evening. Mr. Olson knew Philip had the Buick, and he heard Mrs. Olson tell Philip to bring the car back to their home.

On appeal, plaintiffs invoke case law addressing when a parent may be held liable for the negligence of a child who uses the parent's car on a "family errand." They argue they raised two material issues of fact. First, at the time of the collision, was Philip Olson defend-

ants' agent for purposes of conducting family legal business? Second, was Philip Olson acting as defendants' agent when returning the car to their house at their direction?

A trial court should grant summary judgment where "the pleadings, depositions, and admissions on file *** show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) "The purpose of a summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists." (*Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 866.) The court must construe the evidence strictly against the movant. (*Hindo v. University of Health Sciences/Chicago Medical School* (1992), 237 Ill. App. 3d 453, 459.) A plaintiff against whom summary judgment is sought need not prove his case at this stage, but he must present some facts that arguably would entitle him to judgment. (*Hindo*, 237 Ill. App. 3d at 459.) A grant of summary judgment is a ruling of law which we review *de novo*. *Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 795.

Defendants claim that the doctrines of collateral estoppel and *res judicata* prevent plaintiffs from raising a claim of agency. We choose not to address this argument because we find that, as a matter of law, plaintiffs have presented no facts to support their agency claim.

■ Under Illinois law, parents may be held liable under an agency theory for their child's negligent driving if, at the time of the accident, the child was engaged in doing the parents' business. (*Graham v. Page* (1921), 300 Ill. 40, 43; *Ritter v. Taucher* (1978), 65 Ill. App. 3d 464, 468; *O'Haran v. Leiner* (1940), 306 Ill. App. 230, 233-35.) Parents are not liable if they merely allow the child to use the car for his own purposes rather than for a family errand. (*White v. Seitz* (1930), 342 Ill. 266, 271; *Arkin v. Page* (1919), 287 Ill. 420, 425-27. Contra *Toms v. Ketterer* (1925), 237 Ill. App. 135, 144.) What constitutes a family errand is a question of fact. (*Ritter*, 65 Ill. App. 3d at 468; *O'Haran*, 306 Ill. App. at 234.) An agency relationship does not arise merely from the parent-child relationship. *Arkin*, 287 Ill. at 422; *Ritter*, 65 Ill. App. 3d at 467.

Given these principles, defendants would be vicariously liable for their son's negligence only if, at the time of the accident, the son was using the car with defendants' permission for a family errand. Plaintiffs argue that the evidence raised a factual question as to the existence of two family errands: (1) the family legal business that Philip Olson undertook at the courthouse; and (2) Philip Olson's return of the car, at his mother's demand, to defendants' house.

■ We may dispose quickly of the first of these alleged factual issues. The evidence is uncontradicted that Philip Olson borrowed the car without defendants' permission. Defendants did not authorize him to borrow the car on the night before the accident; they had never before authorized him to borrow the Buick; and they told him that he was not supposed to be using the car. Moreover, the accident occurred only after Philip drove back from the courthouse. Thus, the first ground plaintiffs urge raised no genuine issue of fact as to agency. Moreover, any agency relationship would be irrelevant to whether defendants may be liable for the accident that occurred after Philip Olson returned from his courthouse errand and started to use the car for a different purpose.

The second ground urged by plaintiffs is more persuasive. However, we conclude that case law does not support parental liability for the negligence of a child who drives the parents' car solely because they demand that he surrender his unauthorized possession of the vehicle. Even if parents "permit" the child to use the car for this limited purpose, we conclude that merely restoring the car to its rightful possessors does not involve the sort of parental benefit necessary to a finding that the child was on a family errand. We have not found a factually comparable case, but we believe the principles drawn from case law oppose extending agency liability under such circumstances.

■ The seminal Illinois case on this issue is *Arkin* (287 Ill. 420). There the supreme court rejected the broad "family purpose doctrine," under which parents who buy a car for the pleasure of the family and permit their child to use the automobile may be liable for the child's negligence even if the child used the car purely for his or her own private purposes. Drawing on general principles of agency, the court refused to find that a son was an agent of his father when the son "us[ed] the family automobile to take a ride by himself for pure pleasure." (*Arkin*, 287 Ill. at 425.) The son could not be said to be doing the father's business merely by "furnishing amusement for himself." *Arkin*, 287 Ill. at 425.

In *Graham v. Page* (1921), 300 Ill. 40, the supreme court upheld a verdict against the father of a 16-year-old girl who drove her father's car into the plaintiff's bicycle. At the time of the collision, the daughter was using the car, with her father's consent, to pick up her shoes from a repair shop. (*Graham*, 300 Ill. at 42.) Holding that the father was vicariously liable for the daughter's negligence, the court explained that the daughter was not merely driving the car for pleasure but was using it "on a family errand,—one of the purposes her father testified he kept the car for and one of the purposes *** his daughter

was authorized to drive it for." (*Graham*, 300 Ill. at 43.) Recognizing that the mere relation of parent to child did not create agency, the court stressed that the father had a duty to supply (and to keep in good repair) shoes for his minor child, who was unemployed and lived with her parents. Thus, in driving to the shoe repair shop, the child was performing "the duty and business of her father" as he had authorized her to do. *Graham*, 300 Ill. at 43.

In *Gates v. Mader* (1925), 316 Ill. 313, the court upheld a judgment against the father of a driver who injured the plaintiff while driving several family members to a lunch engagement. (*Gates*, 316 Ill. at 314.) The court noted that, before the incident, the father regularly had allowed the son to drive the car for the pleasure of the son or family members. Holding that *Arkin* did not control the result, the court attached no importance to the son's adult age or separate residence at the time of the accident. Rather, what was crucial to the finding of *respondeat superior* liability was that he was driving the car with his father's authorization for the pleasure and convenience of the family, which was one of the purposes for which the father owned and kept the car. *Gates*, 316 Ill. at 317-18.

In *White v. Seitz* (1930), 342 Ill. 266, the court reversed a judgment based on agency liability where the minor child drove his father's automobile with his father's permission but purely for his own pleasure. The court held that *Arkin* was controlling. (*White*, 342 Ill. at 273.) The court distinguished *Gates* by noting that, in *Gates*, the driver of the car was not a member of the family or a minor, but an adult who lived apart from his parents and visited his parents about once a week. (*White*, 342 Ill. at 270-71.) Recovery in *Gates* was based on *respondeat superior*, "not on the family car or 'family purpose' doctrine." (*White*, 342 Ill. at 271.) In *White*, the court explained that it was adhering to the *Arkin* rule that a parent is not liable under *respondeat superior* for damages caused by a child who drove the parent's car for the child's own purposes, even if the parent consented to that use. *White*, 342 Ill. at 273.

In *O'Haran v. Leiner* (1940), 306 Ill. App. 230, the defendant, his wife, and their six-year-old daughter lived together. The defendant provided all the family's income. His wife drove his car downtown to purchase a party dress for the daughter. While on this errand, she drove the car into the plaintiff's car. (*O'Haran*, 306 Ill. App. at 232.) Holding that the defendant's wife had been acting as his agent at the time of the collision, the court reasoned that nothing in previous decisions limited the scope of "family errands" to the purchase of necessities. The court emphasized that, under the statute then in force, a

husband was chargeable with family expenses, not merely necessities. (*O'Haran*, 306 Ill. App. at 234.) The court concluded that the purchase of the dress was legally equivalent to the shoe repairs in *Graham*, as both errands were undertaken in furtherance of the "business" or "duty" of the husband. *O'Haran*, 306 Ill. App. at 235.

In *Ritter v. Taucher* (1978), 65 Ill. App. 3d 464, the defendant, the mother of the driver whose negligence caused the plaintiff's injuries, was a passenger in her child's car at the time of the accident. (*Ritter*, 65 Ill. App. 3d at 466.) Holding that the trial court erred in granting the defendant a directed verdict, the appellate court explained that the jury could have found an agency relationship between the defendant and her son. The son was returning to college after a visit home. He was unemployed and depended on his parents for both tuition and transportation to college. His parents had driven him to school on earlier occasions. These facts sufficed for a finding that the son was on a family errand at the time of the collision. *Ritter*, 65 Ill. App. 3d at 468-69.

■ The case at bar is not "on all fours" with any of these cases. Here, the record allows for no dispute that, in the first instance, defendants' son did not have their permission to drive the car. However, there is evidence that, after discovering that he had the car, defendants ordered their son to drive the car back to defendants' home. From this, plaintiffs contend they established a factual basis to conclude that, at the time of the accident, Philip Olson was performing a "family errand," *i.e.*, he was returning the car with his parents' consent and for his parents' benefit.

Although so broad an implicit definition of "family errand" is conceivable, we believe that a fact finder ought not be allowed to infer a principal-agent relationship from such facts. Where courts have properly found such a relationship, the child was driving the car in fulfillment of a parental obligation (such as the duty to support the child by buying clothing or providing transportation to college) or to confer a genuine benefit on other family members. (*Graham*, 300 Ill. at 43; *Ritter*, 65 Ill. App. 3d at 468-69.) Moreover, the child's use of the car was with the parent's full consent from the beginning. Here, Philip Olson was doing no more than restoring the car to its rightful possessors after he had taken it without their permission. Defendants, who did not wish to part with the car in the first instance, authorized him to do only what would restore the state of affairs that would have existed had he not taken the car without their permission originally. The situation here is not comparable to one where a child uses his parents' car with their full consent to help them fulfill a parental obligation or

68

to obtain some new benefit. Neither the case law nor the equities *vis-a-vis* the parents support making parents liable for a child's negligent driving, absent any negligence on their part, under such circumstances. Therefore, the grant of summary judgment was proper.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and QUETSCH, JJ., concur.