THADDEUS S. SOMES *et als. vs.* HENRY L. WHITE *et als.*

Hancock, 1875.—April 18, 1876.

*Shipping.*

An action cannot be maintained by the owners of one vessel against the general owners of another vessel for a collision caused by the fault of the latter vessel, she being at the time of the injury in the possession and control of the master as owner, *pro hac vice*, sailing her "on shares."

The personal liability of general owners of vessels for a master's defaults, whether arising *ex contractu* or *ex delicto*, depends solely upon the fact whether the master is the charterer and owner, *pro hac vice*, or not.

ON FACTS AGREED.

CASE, commenced September 25, 1873, against the defendants, as general owners of the schooner "Midnight," in favor of the plaintiffs, as general owners of the schooner "Thames."

It is agreed that both vessels were sailed on shares by their respective masters, and under their control, as is customary in such cases in this state; and the question submitted is whether, under such circumstances, an action for collision by the general owners of the "Thames," against the general owners of the "Midnight," can be maintained in this court.

If maintainable, the action to stand for trial; if not, plaintiffs to be nonsuit.

*A. Wiswell & A. P. Wiswell*, for the plaintiffs.

*E. Hale & L. A. Emery*, for the defendants.

PETERS, J. The case finds that the master had the control of the defendants' vessel, sailing her on shares. Nothing else appearing, this would constitute him an owner thereof, *pro hac vice*. This has ever been the doctrine of this court. For recent adjudications affirming the principle, see *Bonzey* v. *Hodgkins*, 55 Maine, 98 ; *Tucker* v. *Stimson*, 12 Gray, 487.

The plaintiffs admit it to be well settled, that in such a case the general owners are not, ordinarily, liable for the contracts made by the master concerning the sailing and management of the vessel. But they contend that in case of collision they are liable for the master's fault or negligence. They argue that there is a reasonable distinction between claims against owners for the acts of a master arising from his contracts and such as are founded strictly in tort.

We do not assent to the correctness of the position of the plaintiffs. We do not perceive by what principle or rule of law it can be maintained. A personal liability of owners for the master's defaults, certainly must depend upon the fact, whether the relation of master and servant (or principal and agent) exists between themselves and the master or not. The liability must arise under the maxim *respondeat superior* if at all. But where the master is owner *pro hac vice*, no such relation exists. That is the very point established in the cases before referred to. Those cases turn upon the exact finding, that the master is not the agent or servant of the owner. Claims against the owner for the obligations of the master, whether arising *ex contractu* or *ex delicto*,

stand upon the same foundation; when this is removed there can be no liability at all.

The plaintiffs seek to avoid the effect of this reasoning, by attempting to draw a distinction between the liabilities attaching to the possession and control of ponderous property like a ship and articles of ordinary consequence like a carriage or coach. The argument is, that the general owners can be easily ascertained; that their names are upon the papers of the ship; that third persons can protect themselves, in dealing with the captain, by caution and inquiry, as far as contracts are concerned, but cannot protect themselves against the negligence and fault of the master in the conduct of the vessel, and that upon the grounds of public convenience and policy the apparent owner should be liable therefor.

But the argument is more plausible than sound. There was formerly an inclination in the courts to apply such a rule to the owners of real estate occupied and controlled by tenants, and for the same reasons that are urged for its application in the case of vessels. But, as applied to real estate, the doctrine has been rejected of late years by most courts, and emphatically so by our own court in *Eaton* v. *E. & N. A. R. R. Co.*, 59 Maine, 520. Still, there is more reason for adopting the policy contended for, in the matter of real estate than in that of vessels. We do not see why the owners of the vessel, who are out of the possession and control of her, should be liable for injuries caused by collision, any more than the owners of the cargo should be liable therefor. And it is always conceded, even in the courts of admiralty, that the owners of cargo are not liable to any extent in such a case, notwithstanding the vessel at the time of the collision is pursuing a voyage under a charter-party with the owners of the cargo and carrying their property alone. But the master, while owner *pro hac vice*, is no more the agent of the general owners of the vessel, than of the owners of the cargo. Both the vessel and the cargo are under his possession and control for the time being. By the maritime law, the vessel is made a surety for the protection of all persons against the negligence of the master while conducting the vessel, when he is the charterer thereof, and that would seem

to be protection enough. The exigencies of trade and commerce require no more.

The present statutes of this state and of the United States, affecting the rights and remedies pertaining to ownership in vessels, (which we have no space for here,) strongly militate in their force and effect against the argument of the plaintiffs. See R. S., of Maine, c. 36, §§ 5 and 6. R. S. of U. S., § 4282 and five succeeding sections.

Nor is the plaintiffs' position sustained by the decided cases to any extent. The exact question presented here arose in *Thorp* v. *Hammond*, 12 Wall., 408, but no decision was reached, as the court were evenly divided. There may be found some *dicta*, favorable to the plaintiffs' view, in some of the early English cases, but mostly before the doctrine of *pro hac vice* ownership was fully accepted by the English courts. See Ab. Sh., 57, and notes.

There are many analogous cases where the principle under discussion may be regarded as affirmed adversely to the plaintiffs in this case. Thus, it is decided, that general owners out of possession are not liable for supplies purchased by the master for the vessel; nor for repairs ordered by him without their authority; nor for his neglects in the performance or non-performance of his charter parties; nor for his embezzlements of the cargo of shippers. In *Sproat* v. *Donnell*, 26 Maine, 185, it was held that, when a vessel was sailed on shares, the general owner was not liable to the owners of a cargo of lumber shipped on board for a part of it used as fuel during the voyage. In *Sproul* v. *Hemmingway*, 14 Pick. 1,, it is decided that the owner of a brig, which came in collision with a schooner while the brig was being towed by a steamer over which the brig had no control, was not responsible for the damages sustained by the schooner. That case is exceedingly like this case. In the case of the *R. B. Forbes*, Sprague's Decisions, 328, it was determined by Judge Sprague, that, where a ship without sails was lashed to a steamer alongside, and so towed, the steamer furnishing the whole motive power, and the ship came in collision with a sailing vessel, the steamer was responsible for the injury; and he left undetermined whether the ship was also liable (in admiralty) or not. *Fletcher*

v. *Braddick*, 2 Bos. & Pul., 182, much referred to in subsequent cases, is not really an opposing authority. The result there turned upon the finding of the court that the ship should be considered the ship of the owners. She was chartered to the British government, and while, during her voyages, her destinations were controlled by government officers, the navigation of the ship was managed by the owners who hired and paid the master and crew.

Similar contracts of letting were made during our late civil war. between owners of vessels and the United States, and in several cases of collision the owners were held responsible for injuries, upon the ground that the management of the navigation of the ship was not within the control of the United States, so as to constitute the government, *pro hac vice*, owners thereof. *Leary* v. *United States*, 14 Wall., 607. In *Skolfield* v. *Potter*, Davis' R., 392, it was maintained by Judge Ware, that owners should be responsible at least for sailors' wages although out of possession of their ship. But even an exception to this extent was disapproved in the case of. *Giles* v. *Vigereaux*, 35 Maine, 300.

It will be found upon an examination of still other authorities that in the cases where the responsibility of the owners has been sought to be maintained, the inquiry has almost universally been, whether, under the contract of letting, the master or the owners had the possession, command and navigation of the ship. There can be no difference in this respect between a ship and any other species of personal property. The law of principal and agent cannot be applied where no agency exists. Owners are not answerable for a collision which in no sense is directly or indirectly caused by themselves. 3 Kent's Com., 194. *Blanchard* v. *Fearing*, 4 Allen, 119. *Webb* v. *Peirce*, 1 Curtis C. C. R., 104. *Scott* v. *Scott*, 2 Stark., 438. *Hutton* v. *Bragg*, 7 Taunt., 14. *Fenton* v. *The City of Dublin Steam Packet Company*, 8 Ad. & E., 838. In *Hutton* v. *Bragg*, *supra*, Dallas, J., says, "it may be considered that the charterer of a ship is during the existence of the charter-party to all intents and purposes the owner of the ship." In the last case above cited (a case of collision) Patterson, J., says, "the issue is whether the owners had the possession and care of the vessel; which brings us back to the question, whose servants were the crew."

The authorities both English and American, touching the question presented for our decision, with but very little exception, strongly incline the same way.       *Plaintiff's nonsuit.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.