question must be held to be the natural consequence of the wrongful act of the Cepheus in running into the tow.

The case of the Two Brothers and the boat No. 2,104 is not as clear as the case of the Manhattan No. 12; but, after all, is sufficiently clear to warrant a decree in their favor.

Let a decree in favor of the boats be entered in each case.

------

## The Ella B.

*(District Court, N. D. New York.   July 15, 1885.)*

ADMIRALTY JURISDICTION—TUG ENGAGED IN TOWING SMALL CRAFT IN HARBOR OF BUFFALO—LIBEL FOR SEAMEN'S WAGES.

A tug of less than five tons burden, whose chief occupation is the towing of canal-boats and other small craft about the harbor of Buffalo and adjacent waters, occasionally running out upon lake Erie and the Niagara river, is engaged in aiding commerce upon navigable waters of the United States, and within the admiralty jurisdiction.

In Admiralty.

*Frank F. Williams,* for libelant.

*D. G. Jackson,* for respondent.

COXE, J. This is an action to recover seaman's wages. The defenses are, want of jurisdiction and payment. The Ella B. is a tug of less than five tons burden. Her chief occupation has been, and is, the towing of canal-boats and other small craft about the harbor of Buffalo and the waters adjacent thereto. She has occasionally, in pursuing her vocation, been out upon Lake Erie and the Niagara river. Since the act of August 5, 1882, (22 St. at Large, 300,) she has not been enrolled.

It is contended by the respondent that, because of her diminutive size and the restricted theater of her operations, she is not within the admiralty jurisdiction of the court. This proposition cannot be maintained. She was engaged in aiding commerce upon navigable waters of the United States. This fact, irrespective of questions relating to the size and tonnage of the vessel, the absence of enrollment and license, and the circumscribed nature of her employment, is sufficient. to give the court jurisdiction. *The B & C,* 18 FED. REP. 543; affirmed, *Ex parte Boyer,* 109 U. S. 629; S. C. 3 Sup. Ct. Rep. 434; *The Genesee Chief,* 12 How. 443; *The Eagle,* 8 Wall. 15; *The Hine* v. *Trevor,* 4 Wall. 555; *U. S.* v. *Burlington & H. C. F. Co.* 21 FED. REP. 331; *Endner* v. *Greco,* 3 FED. REP. 411; *The General Cass,* Brown, Adm. 334; *Malony* v. *Milwaukee,* 1 FED. REP. 611; *The Gate City,* 5 Biss. 200; *The Volunteer,* Brown, Adm. 159; *The Hezekiah Baldwin,* 8 Ben. 556; *The McChesney,* 8 Ben. 150; affirmed, 15 Blatchf. 183; *Murray* v. *The Nimick,* 2 FED. REP. 86; *The Florence,* 2 Flippin, 56.

With reference to the defense of payment it is thought that the testimony of the libelant, enforced as it is by dates and memoranda, is entitled to greater weight than the somewhat loose denial of the master of the tug. There should be a decree in favor of the libelant for the amount demanded in the libel, with interest and costs.

---

## THE THOMAS McMANUS.[1]

*(District Court, E. D. New York.* November 29, 1884.)

1. CARRIERS OF GOODS BY WATER—LIABILITY BEYOND ROUTE—LIEN.

   Persons in charge of a steam-boat in New York bound for Hudson, N. Y., gave a receipt for cotton shipped on board, which was marked, " Canoe Cotton Mills, Valatie, N. Y.," with knowledge that it was intended to go from Hudson by rail to K., and that there full freight from N. Y. to K. was to be paid, which was to be divided between the steam-boat and the railroad in accordance with an understanding between them. *Held*, that the duty of the steam-boat as carrier was discharged by delivering the goods to the railroad at Hudson.

2. SAME—EVIDENCE OF SPECIAL CONTRACT.

   There must be clear and satisfactory evidence of a special contract to extend the liability of a steam-boat to the transportation and delivery of goods by a railroad beyond the place of the boat's destination, in order to charge the boat with a lien for damages caused by the wrong delivery by the railroad.

In Admiralty.

*Goodrich, Deady & Platt*, for libelant.

*Tenbroeck & Vanorden*, for claimant.

BENEDICT, J. The receipt given by those in charge of the steam-boat at the time of the shipment of the cotton does not amount to a bill of lading. It states no contract for the transportation of the cotton. It mentions no place on the route of the steam-boat, or on the line of the railroad connecting at Hudson, for delivery of the cotton, and contains no language from which to infer a contract on the part of the owners of the steam-boat to transport the cotton beyond Hudson, the place of the steam-boat's destination. Nor can such a contract be inferred from the fact that the steam-boat made a connection at Hudson with a railroad running thence through Kinderhook, and received this cotton, marked, "Canoe Cotton Mills, Valatie, N. Y.," with knowledge that it was intended to go by the railroad from Hudson to Kinderhook, and that upon its delivery there freight was to be paid for the whole transportation from New York to Kinderhook, which freight would be divided between the railroad and the steam-boat, in accordance with an understanding between them.

A special contract to extend the liability of the steam-boat to the transportation and delivery of the cotton by a railroad, and at a place

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.