### HILLS v. LEEDS.

(District Court, D. Maine. January 21, 1907.)

No. 27.

**1. SHIPPING—CHARTER PARTY—CONSTRUCTION.**

Respondent chartered a yacht for a specified sum for a portion of the year 1905, the charter providing for a deduction from the consideration in case the yacht from any accident arising from any defect therein should be disabled for a period of more than 48 hours. The charter also provided that the owner agreed to let, and the hirer agreed to hire, the yacht for the time specified; that the owner should fit out the yacht, and hand her over to the hirer tight, staunch, strong, and in every way fitted for service, and provide an efficient crew, clothe them, and pay their wages; that the owner should assume the responsibility of fire and marine risks, and the hirer should be responsible for any injury amounting to less than $100, should pay the running expenses of the yacht other than the wages of the crew, and should have control of the captain and engineer, with authority to discharge them. *Held*, that such contract was a letting of the vessel, and not a mere contract of service, so that the charterer became the owner for the voyage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 149–155.]

**2. SAME—EVIDENCE.**

In an action to recover the balance due on a charter party, evidence *held* insufficient to show that an injury to the yacht was caused by a defect in her outfit, within a provision in the charter party that, in case she should become unfit for use for a period of more than 48 hours because of any defect in her outfit, there should be a pro rata return of the charter money to the hirer.

**3. SAME—INJURIES TO VESSEL.**

Where a charter party required the hirer to redeliver the yacht to her owner in the same condition in which he received her, and when she was delivered the blades of both her propellers were bent, her owner was entitled to recover the expense incident to the repair thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 219–221.]

Grosvenor Calkins, for libelant.
Henry M. Earle, for respondent.

HALE, District Judge. This is a suit upon a charter party. By this contract the libelant leased to the respondent the yacht Kasagi for a portion of the year 1905, ending September 30th, for the sum of $2,562.50, to be paid in five several installments. Libelant brings

this suit for the last installment and for certain disbursements, which he claims are due to him under the terms of the charter party. The main contention arises under article 3 of the charter party, which provides as follows:

"In the event of the yacht, from any accident to the yacht or machinery, arising by or from any defect in the yacht or her outfit, becoming unfit for use, said disability not having been brought about by any act or order of the hirer, whereby the hirer is deprived of the use of the yacht for a period longer than forty-eight (48) hours at any time or times, he will allow a pro rata return of the charter money to the hirer for such time as the yacht shall be unfit for use."

The respondent claims that on the 17th day of May, 1905, the yacht collided with a schooner and with the pier and marine railway at Jacob's Yard, City Island, New York, and was damaged and became unfit for use, and that said damage arose "from a defect in the yacht or her outfit"; that the disability arising from such damage continued for a period exceeding 48 hours, namely, from May 17, to June 18, 1905, a total of 31 days, during which time he was wholly deprived of the use of the yacht. He demands, therefore, a pro rata return of the charter money for such time. Respondent further claims that he made certain disbursements on account of repairs to the yacht, which disbursements should have been made by the owner, according to the terms of the charter party, and that the amount due from the libelant to the respondent for a pro rata return of the charter money and for the disbursements, completely offsets any claim which may be due to the libelant under the charter party.

Under the contention raised, it is necessary to examine specifically the provisions of the contract. In addition to the clause to which I have already referred, the charter provides that the owner agrees to let, and the hirer agrees to hire, the yacht for the time specified; that the owner agrees to fit out the yacht, and hand her over to the hirer tight, staunch, strong and in every way fitted for service; to provide an efficient crew to navigate her, consisting of captain and engineer; to clothe them and to pay their wages; that the vessel shall be delivered to the hirer in good condition as to her machinery and connections, and complete as to her regular outfit; that the owner shall assume all responsibility as to fire and marine risks; the hirer to be responsible for an injury to said yacht amounting to less than $100. The hirer agrees to take the yacht over in the city of Boston at the beginning of the contract, and to deliver her at the end of the term in the same condition as he received her, reasonable wear and tear only excepted; to pay the running expenses of the yacht and the food of the crew, but not the wages of the crew; also to pay the consumable stores used for the working of the yacht; to be responsible for breakages; to paint the yacht. The general provision is further made:

"That the hirer is to have the same authority as the owner of the boat so far as regards the management of the yacht and control of the captain and engineer, and that, in the event of either of them proving disobedient or incompetent, the hirer shall have the right to discharge him or them, and engage others in their place; but in such case the hirer shall, if necessary, provide new clothes for the man or men engaged in place of those so discharged."

This contract must be held to be a contract of letting and hiring, and not a mere contract of service. By it there was a demise of the vessel; her possession, command, and control passed from the owner to the hirer or charterer. The charterer became the owner for the voyage. The mere fact that the owner was to provide an efficient crew and to pay their wages is not inconsistent with the above conclusion. To arrive at the rights of the parties in this regard it is not necessary to examine section 4236 of the Revised Statutes [U. S. Comp. St. 1901, p. 2944], which provides that a charterer, in case he shall man, victual, and navigate a vessel, shall be deemed to be the owner of the vessel; for in this case the contract itself is explicit in this regard, and makes it clear that it is the intention of the parties that the charterer is to have the management and control of the yacht. The captain, engineer, and the crew then became the agents of the charterer during the term of the charter; and the general owner is not responsible for their acts or negligence, unless the charterer can establish by affirmative testimony that the owner did not "provide an efficient crew to navigate the yacht." The charterer has not met the burden of proving that the owner did not provide an efficient crew.

The courts have repeatedly passed upon the questions involved in this case. In Thompson v. Winslow (D. C.) 128 Fed. 73, this court had occasion to discuss the charterer's liability for the acts and defaults of the master and crew in the navigation of the vessel. In Reed v. United States, 11 Wall. (U. S.) 591, 20 L. Ed. 220, in speaking for the Supreme Court, Mr. Justice Clifford said:

"Charterers or freighters may become the owners for the voyage without any sale or purchase of the ship, as in the cases where they hire the ship, and have, by the terms of the contract, and assume in fact, the exclusive possession, command, and navigation of the vessel for the stipulated voyage. But where the general owner retains the possession, command, and navigation of the ship, and contracts for a specified voyage—as, for example, to carry a cargo from one port to another—the arrangement in contemplation of law is a mere affreightment, sounding in contract, and not a demise of the vessel, and the charterer or freighter is not clothed with the character or legal responsibility of ownership. Unless the ship herself is let to hire, and the owner parts with the possession, command, and navigation of the same, the charterer or freighter is not to be regarded as the owner for the voyage, as the master, while the owner retains the possession, command, and navigation of the ship, is the agent of the general owners, and the mariners are regarded as in his employment, and he is responsible for their conduct."

In The Del Norte (D. C.) 111 Fed. 542, affirmed 119 Fed. 118, 55 C. C. A. 220, Judge Hanford said:

"And the charterer is owner pro hac vice where the master is subject to his orders and directions, though appointed to his position as master by the general owner. The India (D. C.) 14 Fed. 476; The Bombay (D. C.) 38 Fed. 512. In such a case the charterer is himself responsible for the torts of the master, because, having a legal right to control, he is legally presumed to actually control, the master's conduct. On the other hand, the general owner is not responsible, because he does not have the right to control the master in the performance of his duties. Wood, Mast. & S. § 281."

In Somes v. White, 65 Me. 542, 20 Am. Rep. 718, Mr. Chief Justice Peters discusses the rights and liabilities of general owners and of owners pro hac vice and says:

"It will be found upon an examination of still other authorities that in the cases where the responsibility of the owners has been sought to be maintained the inquiry has almost universally been whether, under the contract of letting, the master or the owners had the possession, command, and navigation of the ship. There can be no difference in this respect between a ship and any other species of personal property. The law of principal and agent cannot be applied where no agency exists. Owners are not answerable for a collision which in no sense is directly or indirectly caused by themselves."

See, also, U. S. v. Shea, 152 U. S. 178–189, 14 Sup. Ct. 519, 38 L. Ed. 403; McCormick v. Shippy (D. C.) 119 Fed. 226.

The Golcar S. S. Co. v. Tweedie Trading Co. (D. C.) 146 Fed. 563, to which my attention has been called, does not in principle differ from the cases which I have cited, nor do the other cases cited by the learned counsel for the respondent, when examined, present any different principles.

The principal question, then, is whether the damage occurred from a defect in the yacht or her outfit. Upon this question respondent offers testimony tending to show that the damage was occasioned by the improper action of the bells, and that such improper action was occasioned by a defect in the outfit of the yacht. Upon this point the testimony is somewhat contradictory. The burden is upon the respondent to show that the damage occurred within the provisions of article 3 of the charter party. Upon a careful analysis of the testimony, I do not find that the respondent has sustained this burden. Capt. Pippy in his deposition has testified that the accident happened from the improper working of the bells; but in his log it does not appear that he thought there was any improper working of the bells, but, rather, that at the time of the accident he was of the opinion that it happened through some misunderstanding in the engine room. The testimony of Savary, the engineer, has more probative value than any other testimony in the case; it is the evidence of the party who knew most about the transaction. I find nothing to discredit his testimony. From it, and from the whole evidence in the case, I find that there is not sufficient proof that the damage occurred from a defect in the yacht or her outfit. It is clear that the libelant may recover for the balance due upon the last payment to be made for the hire of the vessel under the charter party.

It will be seen by the second article of the agreement to hire that the respondent was under obligation to pay the running expenses of the yacht, the food of the crew during the term of the charter; he also having the right to discharge the captain and engineer in the event of their proving disobedient or incompetent. The libelant has proved that he has paid certain running expenses of the yacht and certain disbursements and advances which it was the duty of the charterer to pay. The libelant should recover for these sums.

Under the first clause of the agreement for hiring, the respondent has agreed to redeliver the yacht to her owner in the same condition in which he received her. Under an amendment to the libel, the testimony showed that when the yacht was redelivered to the libelant she was not in the condition in which the hirer had received her, but that the blades of both propellers were bent. Libelant may therefore recover the amount which he has paid, being less than $100, for his repairs to the propeller blades.

149 F.—56

As I have found that the damage did not occur from a defect in the yacht or her outfit, it follows that I do not allow the respondent to recover for any counterclaim raised by his set-off. While, perhaps, very little question arises as to the payments made in the case, all such matters are for an assessor.

A decree may therefore be entered for libelant. Weld A. Rollins, Esq., is appointed assessor to assess damages consistent with this opinion.