Petition of LIEBLER.

THE FRANCESCA.

No. 2020.

District Court, W. D. New York.

June 11, 1937.

Flynn, Tillou & Ward, of Buffalo, N. Y., for claimant.

Rann, Brown, Sturtevant & Kelly, of Buffalo, N. Y., and Harry A. Kulowski, of Lancaster, N. Y. (Arthur E. Otten, of Buffalo, N. Y., of counsel), for petitioner.

KNIGHT, District Judge.

This matter comes on by the petition of Bertha M. Liebler for exoneration from or limitation of her liability as owner of the motorboat Francesca for an accident which occurred on July 12, 1936, and resulted in personal injuries to one Frances Peterson resulting in her death.

On the date mentioned, Frances Peterson, a girl of the age of fourteen years, was in bathing with a young man named Walker at a location in Lake Erie known herein as Wanakah Beach, situated in comparative proximity to the City of Buffalo, in this Western District of New York. The motorboat Francesca operated by Charles Liebler, husband of petitioner, was then cruising about in the vicinity of these bathers. It is not denied that Liebler stopped his boat and invited or permitted the bathers to climb aboard on the forward deck. The girl sat immediately in front of the windshield on the left side, and the young man farther forward on the right side of the deck. The boat then proceeded in a circuitous direction. Shortly after starting up, the girl either fell off or slid off into the water, went under the boat, and was badly cut by the propeller. She sustained injuries from which she died. It is undenied that the petitioner was the owner of the Francesca; that she was present in the boat at the time of this accident, sitting immediately back of her husband; that she was in a position to see what transpired in taking this girl on and the operation of the boat; and that four guests of husband and wife were on the boat, including a child.

The first question to decide is whether the operator of the boat is guilty of negligence and whether there was any approximate connection between such negligence and the injuries aforesaid. It is the claim of the petitioner that when the boat

was in the vicinity in question Charles Liebler saw the two bathers and, in the belief that they were in distress, swung the boat and went up to them to pick them up; that both bathers climbed onto the forward deck unassisted; that the girl seated herself on the deck and held onto the windshield with the left hand and to the headlight with her right hand; that the bathers then were something like 600 feet from shore and in deep water; that immediately thereafter Liebler started and turned the boat to the left, and then swung to the right toward deeper water in order to line the vessel up to come in closer toward the shore to let the bathers off from the boat; that while the boat was on this turn to the right the girl slid off from the deck into the lake; that the boat was then not making a sharp turn; and that it was proceeding at a slow rate of speed.

This testimony of Liebler is substantially corroborated by petitioner and other occupants of the boat. On the other hand, testimony on behalf of the claimant is that these bathers were in no distress; that there was no necessity for taking them aboard the boat; that they were voluntarily taken on in order to give them a ride; that they were taken on at a point in the lake of comparatively few feet in depth; that the girl was an excellent swimmer; that immediately preceding this Liebler had been propelling the boat at high rate of speed, and, immediately following the taking of the swimmers on deck, he swung sharply to the left and began circling around at a high rate of speed; that the girl was thrown off as a result of the speed and the curve.

■ The weight of the evidence supports the conclusion that the operator was negligent. The operator was a man grown. The girl was of tender age. She was permitted to sit on a deck which the evidence shows was crowned and smooth. He was an experienced speed boat operator. He assumedly knew the danger to one on the forward deck from the quick turning of a boat. He could have located her in a safe place at the rear deck. It seems under all these circumstances it was the duty of the operator of the boat to exercise strict care to see that the girl was in a safe place. He did not do this. It makes no difference whether the operator had believed the swimmers to be in distress,

whether they invited a ride, or whether he suggested their riding, having gotten her aboard in this position it was his duty to use the care stated. Further, I am satisfied from the evidence that immediately following the taking of the girl aboard the operator began to and did proceed at a high rate of speed, and then when the boat was being turned the girl was thrown off from the deck. The suggestion of petitioner that the girl voluntarily slid off from the deck finds no support. Had she done this, she doubtless would not have gone under the propeller. The mangled condition of her body resulting from the striking of the propeller is further evidence of the speed at which the boat was then being propelled.

Disinterested witnesses describe the maneuvering of the boat and the location of these transactions. There are corroborating circumstances and certain material contradictions in the testimony of the petitioner's witnesses to further support the conclusion that the operator of the vessel was negligent. As against the testimony of those in the boat, the court accepts the testimony of such witnesses upon the main questions and that a causative connection existed between such negligence and the injury complained of.

■ The next question is whether the petitioner is responsible or liable for the conduct of the operator of the vessel. It is uncontradicted that the operator, husband of petitioner, had carte blanche authority from the owner to use the boat when and where he liked. It is uncontradicted that on this occasion the husband was operating the boat; that the petitioner was in the boat, sitting immediately back of her husband; and that it was being operated for the joint pleasure of husband and wife and guests. Under such a set of circumstances, it is my opinion that the operator acted as the agent of the petitioner and that the petitioner is liable as a principal. There was nothing to prevent petitioner from preventing or protesting against taking on of these swimmers. There was nothing to prevent petitioner directing that the swimmers be placed in a safe place in the boat. There was nothing to prevent the owner from giving directions regarding the operation of the boat as to its speed and movements. The operator was subject to the control of the petitioner. She did not assert this ownership.

Under these circumstances, the law placed the liability upon her for the negligence of the operator.

■ While no comparable case is called to my attention, it seems to me that the familiar rule of liability of principal for the act of an agent as regards negligence is applicable here. Numerous cases are called to the attention of the court in which, in effect, it has been held in the operation of automobiles that where the owner is present in the automobile and has the right to command the operation, he is liable for the acts of the operator. Von Blaricom v. Dodgson, 220 N.Y. 111, 115 N.E. 443, L.R.A.1917F, 363; De Carvalho v. Brunner, 223 N.Y. 284, 119 N.E. 563; Duffy v. Ascher, 191 App.Div. 918, 181 N.Y.S. 934. The opinions in these cases are important as pointing the reason for the rule. The evidence supports the conclusion that the vessel in question was being operated in and about the business of the petitioner with her knowledge and consent and within her control and command. This is not a case in which the principal was not present. Mere presence alone, however, might not in all circumstances be sufficient to charge the owner with liability. But here ample opportunity was given the owner to direct the operator and prevent injury. Lack of knowledge of operation is not material.

The petitioner cites several cases, but each in its facts is distinguishable from the one at bar. The Del Norte (D.C.) 111 F. 542, was a case in which the question of the liability of a charterer of a boat was involved. In The Fort Bragg (D.C.) 6 F.Supp. 13, the petitioner was the charterer pro hac vice. In Somes v. White, 65 Me. 542, 20 Am.Rep. 718, it was held that where the master is owner pro hac vice no relation of principal and agent exists. From these cases it will be seen that control and possession were in another than the owner.

■ The next question for determination is whether the boat Francesca, a small motorboat 19 feet in length over all and 6 feet in width, comes within the definition of a "vessel" as used in the statutes relating to limitation of liability. Section 188, title 46 U.S.C. (46 U.S.C.A. § 188), is titled "Limitation of liability of owners applied to all vessels." This section as amended June 5, 1936, reads: "except as otherwise specifically provided therein, the provisions of sections 175, 182, 183 * * * of this title shall apply to all sea-going vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." This is section 4289 of the Revised Statutes, as amended February 18, 1875, June 19, 1886 (24 Stat. 80) and June 5, 1936 (49 Stat. 1481). The original statute, Act of March 3, 1851 (9 Stat. 636, § 7), excepted from its application "the owner or owners of any canal boat, barge, or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation." The evident purpose of the amendment in taking out the exception was to make the statute applicable to all vessels, irrespective of the purposes to which they are put.

"There is no expression in the act, as it now stands, to indicate that the nature of the employment in which a vessel is engaged is to be considered in determining whether or not the act is to apply to her." In re Eastern Dredging Co. (D.C.) 138 F. 942, 945. The act referred to is the act of 1886. Vide, also, Whitcomb v. Emerson (D.C.) 50 F. 128; The Muriel (D.C.) 25 F.(2d) 505.

■ Since the amendment taking out the exception, it has uniformly been held by the courts that the question of the right to limitation of liability is not based upon the engagement of the vessel in maritime commerce, and further it is not based upon the question of the size of the craft. Among numerous cases that support this view are: Warnken v. Moody (C.C.A.) 22 F.(2d) 960, which involved a gasoline launch, 30 feet in length, 9-foot beam; The Linseed King (D.C.) 24 F.(2d) 967, affirmed In re Spencer Kellogg & Sons, Inc. (C.C.A.) 52 F.(2d) 129, which involved a gasoline launch, 45 feet in length, 10 feet in breadth, and 4 feet 6 inches in depth; The Mistral (D.C.) 50 F.(2d) 957, which involved a pleasure yacht; The Oneida (C.C.A.) 282 F. 238, which involved a small launch; The Alola (D.C.) 228 F. 1006, which involved a gasoline motorboat, 45 feet 9 inches long and 9 feet 8 inches beam. It is true that certain of the boats considered in some of these cases were engaged in commerce in some form. They were, however, held to be vessels within the provisions of the limitation statutes.

The Mamie (D.C.) 5 F. 813, 819; In re Eureka No. 32 (D.C.) 108 F. 672; The Ella B (D.C.) 24 F. 508; Simpson v. Story, 145 Mass. 497, 14 N.E. 641, 1 Am.St.Rep. 480, cited by the claimant, were decided

prior to the amendment of 1886, and are not in point now. The effect of the amendment is shown in the opinion in The Mamie, in which it was said: "The exceptions in the act itself indicate the intention of congress to restrict its benefits to what is generally known as maritime commerce, though it may also happen to be commerce between the states." The Francesca was registered as a motorboat, was subject to regulation by virtue of sections 511-517, title 46 U.S.C. (46 U.S.C.A. §§ 511-517), and section 511, supra, defines a "motorboat" as "every vessel propelled by machinery and not more than sixty-five feet in length except tug boats and tow boats propelled by steam."

It is my opinion, therefore, that the motorboat in question, small though it was and used as it was for pleasure, comes within the meaning of a "vessel" as used in the limitation statutes.

The next question to be determined here is whether petitioner herein may limit her liability. Section 183, title 46 U.S.C., 46 U.S.C.A. § 183 (Rev.St. § 4283) provides for the limitation of liability of the owner of a vessel for damages incurred without "the privity or knowledge of such owner." " 'Privity' means some fault or neglect in which the owner personally participates. 'Knowledge' means personal cognizance or means of knowledge of which the owner is bound to avail itself, of contemplated loss or condition likely to produce or contribute to loss, unless proper means are adopted to prevent it. Mere negligence does not necessarily establish existence on the part of the owner of such privity or knowledge, * * * amounting to actual negligence or omission on their part to maintain the vessel in a seaworthy condition." The Carroll (D.C.) 60 F.(2d) 985, 993. "The privity or knowledge must be actual and not merely constructive. * * * There must be some fault or negligence on his [owner's] part or in which he in some way participates." The 84-H (C.C.A.) 296 F. 427, 431. Privity or knowledge "imports actual knowledge causing or contributing to the loss or knowledge, or means of knowledge of a condition of things likely to produce or contribute to the loss without adopting proper means to prevent it." The Princess Sophia (D.C.) 278 F. 180, 188. To deny limitation of liability something more than mere negligence must be shown. 58 C.J. 658, § 1144; In re Eastern Transp. Co. (D. C.) 37 F.(2d) 355; The Yungay (D.C.) 58 F.(2d) 352; The G. K. Wentworth (C.

C.A.) 67 F.(2d) 965; The Longfellow (C. A.) 104 F. 360; The Oneida (C.C.A.) 282 F. 238; La Bourgogne, 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973.

Finding petitioner negligent, the burden rests upon her to show lack of privity and knowledge. That burden has been sustained upon the record in the case and under the authorities. The petitioner did no act contributing to the injury. Petitioner did not personally participate in any fault or act of negligence contributing to the injury. Petitioner gave no direction with reference to the operation of the vessel. It appears from her testimony that she had no knowledge of the operation of the boat. Her husband to whom she intrusted the operation of the boat was experienced in its operation.

It is my conclusion, therefore, that the petitioner is entitled to limit her liability to the value of her interest in the vessel. Since the value of the vessel is small, this finding may be unfortunate in its effect. The measure of application of any statute herein is not its effect in any particular instance. This being a case which, in the judgment of the court, the petitioner under the law is entitled to limit her liability, the statute, of course, must prevail.