Earl W. Milner, Administrator of Estate of Darrell Wayne Milner, Deceased, Appellant, v. Arch D. Nelson et al., Appellees.

Gen. No. 9,690.

Opinion filed March 3, 1950. Released for publication March 29, 1950.

MANUEL WISEMAN, of Alton, and MORRIS B. CHAPMAN, of Granite City, for appellant.

JOSIAH WHITNEL and RALPH D. WALKER, both of East St. Louis, and JOHN GIBBONS, of Jerseyville, for appellees.

MR. JUSTICE DADY delivered the opinion of the court.

The amended complaint, on which this case was tried, filed by Earl W. Milner as administrator of the estate of Darrell Wayne Milner, deceased, charged the defendants, Arch D. Nelson and Edward Nelson, copartners, with having wrongfully caused the death of decedent.

The case was tried before the court without a jury. At the conclusion of all of the evidence the court entered a judgment which found defendants not guilty and dismissed the suit.

The defendants were engaged in the lumber and supply business in Jerseyville, and owned a 1932 Ford truck which had a dump body. The truck had a window in the rear of the cab through which the rear of the truck could be seen. John Mathis was defendants' office manager.

On May 10, 1947, the Boy Scouts of Jerseyville had a paper drive for the collection of waste paper. James Prough and Stanley Miller were two of the Scouts. Prough was aged 16 years, was 5 feet 11 inches in height and weighed 160 pounds. He had had a driver's license since June 18, 1946, and had previously had some experience in driving a pickup truck on a farm, but had not driven a truck on a highway. Miller was aged 15 years and had no license.

On May 9, Miller went to defendants' office and asked Mathis about the loan of the truck to the Scouts for use in such drive. Mathis then told Miller that the Scouts could have the free use of the truck, but that Miller was not to drive it.

On the morning of May 10, Miller and Prough went to defendants' office in Prough's automobile to get the truck. Prough then told Mathis that he had a driver's license, and Miller told Prough that he, Miller, had no such license. Mathis again told Miller and Miller understood that he was not to drive the truck.

Mathis then told Prough to go ahead and take the truck. In doing so Mathis told Prough to drive the truck to a gas station and have it filled with gas and have the gas charged to defendants, which Prough later did. Prough drove the truck and Miller drove the Prough automobile away from defendants' yard. The truck was not returned to defendants' yard and defendants and Mathis did not again see the truck until after the accident in question.

Miller testified that arrangements were made between Miller and Prough and the Scout Master that Prough was to drive in the forenoon and Miller in the afternoon. There is no evidence tending to show that the defendants or Mathis knew of any such arrangement. The truck was used during the day by Prough, Miller and other Scouts in picking up waste paper which people would leave near the curbs on the streets. Prough drove the truck in the forenoon. Miller drove it in the afternoon until the accident, and in doing so made at least one hundred stops. When the truck would stop to pick up paper the Scouts in the rear of the truck would get off and pick up the paper, and would then climb into the truck from the sides, as there were no steps on the rear of the truck. Miller testified that the cab window was all right, but the boys were leaning over it which stopped the vision.

About 2:30 p. m. while Miller was so driving and Prough was seated beside him in the cab, Miller stopped the truck at or near the intersection of two streets to pick up paper, but did not get out of the truck. The motor was kept running. At that time five boys, including the decedent, were in the rear of the truck. As stated in appellant's brief, "from this point the record is somewhat hazy as to just what happened to plaintiff's intestate. . . . In any event at least one of the boys remembers that decedent got off the truck to assist in the loading of the paper. No

23

one is positive as to whether he got back on the truck, although one believed that he did.''

One of the boys testified that after the paper was picked up he climbed back on the truck and hollered, "Let's go,'' and Miller then drove the truck ahead slowly at a speed of four or five miles per hour. Miller testified he made no effort to find out where the boys were, and "I just left when some one said, 'Let's go'.'' When the truck had advanced a few feet it crossed a dip or break in the pavement. Apparently decedent then fell from the truck to the pavement. As stated in such brief "None of the boys noticed Darrell fall or knew just how it occurred.'' No one testified to any unusual movement, such as a jerk or bump, as the truck was driven ahead.

A witness who was about 200 feet distant testified he happened to look up and then saw the decedent in the air about four feet back of the truck and about three or four feet from the pavement, that decedent was then falling backwards, and the back of decedent's head struck the pavement. The truck then proceeded only a short distance when it was brought to a stop. The decedent died within a few minutes from the injuries which he so received.

■ The first contention of the plaintiff is that the court erred in refusing to permit the plaintiff to introduce evidence as to decedent's habits of due care and caution, there being no eyewitness to the accident. The father of decedent was the first witness. He did not see the accident. The court sustained an objection to his testifying as to decedent's customary habits with reference to being careful or otherwise. At this time the court had not been advised that there was no eyewitness. The father was not again asked to testify as to such habits. Thereafter decedent's mother testified that decedent was "a very careful boy.'' There was no evidence to the contrary. Therefore in

24

our opinion there was no prejudicial error in such ruling of the court.

The only other assignment of error is that "the court erred in entering judgment in favor of the defendants and against the plaintiff." In arguing this point plaintiff's brief says that inasmuch as there was "no sharp issue of facts," the court "actually had before it a question of law," and contends that the defendants were as a matter of law liable on the admitted facts.

Such brief states that plaintiff's theory of recovery is based upon the principle of law that defendants entrusted a motor truck to persons incompetent by reason of age and experience to safely operate it, and that they knew or should have known this to be the case.

In *Union Bank of Chicago v. Kalkhurst*, 265 Ill. App. 254, the court said: "It is also claimed that appellant was negligent in turning over the automobile to an incompetent driver and that mere age alone is sufficient evidence of incompetence. It is true that although an automobile is not a dangerous instrument *per se,* yet it may become such if operated by one who is unskilled in its use. And, where the owner intrusts such a machine to an inexperienced or incompetent person, liability for damages may arise, . . . and the age of the driver may be a controlling factor in determining competency. . . . However, in the instant case there is no evidence in the record that Gertrude Hammes was an incompetent driver or that appellant knew she was incompetent at the time he loaned the automobile to her, but the record affirmatively shows he knew her to be competent. Nor can we agree that the age of Gertrude Hammes alone is sufficient evidence of incompetence." (See *Dyreson v. Sharp,* 333 Ill. App. 198.)

It is our opinion that we cannot properly hold that defendants were as a matter of law liable on the admitted facts.

25

 It is also our opinion that the trial court was justified in finding defendants not guilty.

The judgment appealed from is affirmed.

*Affirmed.*