## RAUTBORD v. EHMANN.
### No. 10288.

United States Court of Appeals
Seventh Circuit.

June 22, 1951.

Edward B. Hayes, Lord, Bissell & Kadyk, all of Chicago, Ill., for petitioner-appellant.

Alfred Roy Hulbert, Roy J. Egan, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

Petitioner, Samuel G. Rautbord, as the owner of a certain motor boat, filed a petition under Title 46 U.S.C.A. § 183, for exoneration from, or in the alternative for limitation of liability for damages resulting from an injury sustained by the claimant, Henry E. Ehmann, Jr., a minor, when the latter was struck by petitioner's boat operated by petitioner's minor son, Robert Rautbord. Henry E. Ehmann, Jr., the minor claimant, and Henry E. Ehmann, Sr., his father, had previously filed in the State Court of Cook County, Illinois, an action against petitioner and his son, Robert, the former for damages resulting from his injuries and the latter to recover monies expended in treating and caring for the former. Claimants answered the petition, a hearing was had and the court entered findings of fact and conclusions of law, and on September 11, 1950, entered a decree dismissing the petition. It is from this order the appeal comes to this court.

The accident giving rise to the controversy occurred while the boat was being driven on the Fox River in McHenry Township, Illinois. Preliminary to a discussion of the case on its merits, we are confronted with claimants' contention that the District Court was without jurisdiction and consequently this court is without jurisdiction to entertain the appeal. This contention rests upon the premise that there was neither allegation nor competent proof that the Fox River at the point where the accident occurred was part of the navigable waters of the United States. Claimants excepted to the petition for this reason, which exception was denied without prejudice to the right of the claimants to raise the issue in their answer. This was done, and it was specifically averred that the court lacked jurisdiction "without an allegation and proof on the part of the petitioner that the Fox River * * * was part of the navigable waters of the United States." This jurisdictional issue thus raised was recognized by all parties and the court, after making extensive findings relevant thereto, decided the issue against the claimants. After petitioner's appeal to this court, claimants moved for a dismissal on the same jurisdictional issue, which motion was denied without prejudice to the right to renew the motion at a hearing on the merits, and this has been done.

Petitioner contends, we think without merit, that claimants as appellees are not entitled to raise this issue because no cross appeal was taken from the court's adverse findings and decision thereon. It is a general rule that the question of the court's jurisdiction can be raised at any stage of the proceeding, and we know of no case which has held and we discern no reason why the same rule is not applicable in

536

an admiralty proceeding. Claimants contend, also we think without merit, that the jurisdictional issue must be determined solely from the allegations of the petition. Assuming, without deciding, that the allegations of the petition were deficient in this respect, the fact is that the issue was recognized by all parties, was thoroughly explored, considered and decided by the court.

A more troublesome question arises from claimants' contention that there is no competent proof in support of the jurisdictional findings. This is dependent mainly upon the treatment to be accorded petitioner's request, twice made on the claimants pursuant to the provisions of Rules 32B and 32C of the General Admiralty Rules, 28 U.S.C.A., calling upon them to admit certain facts for the purpose of this cause only. The first request was made March 11, 1949, and claimants' response thereto was stricken by the court upon motion of the petitioner as being ambiguous and indefinite. Thereupon, claimants were given leave to file another response, which was likewise stricken for the same reasons. No further response was made by claimants and no leave was sought to so do. Thus, when the case went to trial, petitioner's request stood without response, and the court under the rules evidently treated the facts stated therein as admitted.

 The facts which the claimants were called upon to admit pertained in the main to the historical navigability of the Fox River and claimants were apprised of the source materials wherein said facts could be verified. No good purpose could be served in a detailed discussion of the facts which claimants were called upon to admit, particularly in view of claimants' contention in the District Court that they were not required to respond on the ground that the request involved hearsay. That the facts which claimants were called upon to admit could have been properly introduced is hardly open to question. See Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847; The Daniel Ball, 10 Wall. 557, 563, 77 U.S. 557, 563, 19 L.Ed. 999; Waterford Electric Light, Heat & Power Co. v. State, 208 App.Div. 273, 203 N.Y.S. 858. Such

being the case, we see no reason why the rule requiring admission should not be given effect even though hearsay matter was involved. Historical documents and like matters are not ordinarily within the personal knowledge or recollection of the living and, even though they constitute hearsay, are, as the cited authorities show, properly admissible on an issue of the instant character. We cannot say that the court erroneously struck claimants' response in the form in which it was made. This left the claimants without any response, and under the rule both petitioner and the court had a right to treat the request as admitted. See Water Hammer Arrester Corp. v. Tower, 7 Cir., 171 F.2d 877, 879. And it follows that the findings of the court of evidentiary facts as a basis for its jurisdiction must be accepted and that claimants' contention as to a lack of jurisdiction must be and is denied.

On the merits of the case, a further statement of the facts is required, even though they are not seriously in dispute. The essential controversy revolves around the effect to be given such facts. As already shown, the involved boat was owned by petitioner and at the time of the accident was operated by Robert, a minor son, 13½ years of age. The boat was known as a 1940 Garwood Runabout #59–A–176, with a 75-horsepower motor, having a maximum speed of thirty miles per hour. The boat was maintained and operated on a stretch of the Fox River between McHenry Dam in Illinois and Wilmot Dam in Wisconsin. About the hour of eight o'clock on the evening of August 30, 1947, it was with petitioner's consent being operated by Robert, who was accompanied by a neighbor girl of about the same age. While the boat was thus being operated, the claimant, Henry E. Ehmann, Jr., a minor of about the age of 16 years, walked into the river at a point known as Shalimar Subdivision. At that point there was a pier which projected ten or twelve yards into the river, and when claimant was in the river twenty or twenty-five yards beyond the pier he saw the boat coming toward him when it was twenty-five yards away. At that time, claimant dived under the water, evidently

in an attempt to avoid being struck. The operator of the boat, so he testified, did not see the claimant at any time until he heard a thud against the boat and looking back saw someone in the water. Claimant's left foot had been struck, which caused a fracture of several small bones and the laceration of tendons. The personal injuries thus sustained give rise to the damages sought to be recovered. The value of the boat was $1,300.00.

█ The facts thus related are as found by the court. At this point and prior to a consideration of other findings, it appears pertinent to note the legal principles to be applied in determining whether the petition was properly dismissed.

Title 46 U.S.C.A. § 183 provides in part as follows:

"(a) The liability of the owner of any vessel * * * for any loss, damage, or injury by collision * * * occasioned, or incurred, without the privity or knowledge of such owner * * * shall not * * * exceed the amount or value of the interest of such owner in such vessel * * *."

Referring to this provision, the court in Just v. Chambers, Executrix, 312 U.S. 383, 385, 668, 61 S.Ct. 687, 690, 85 L.Ed. 903, stated: "The statutory provision for limitation of liability, enacted in the light of the maritime law of modern Europe and of legislation in England, has been broadly and liberally construed in order to achieve its purpose to encourage investments in shipbuilding and to afford an opportunity for the determination of claims against the vessel and its owner."

And on the following page the court stated: "It looks to a complete disposition of what may be a 'many cornered controversy', thus applying to proceedings *in rem* against the ship as well as to proceedings *in personam* against the owner, the limitation extending to the owner's property as well as to his person. (Citing cases.) It applies to cases of personal injury and death as well as to cases of injury to property."

█ And it appears to be rather firmly established that the owner of a boat op-

erated by another party is entitled to exoneration from all liability for damages occasioned without fault or negligence on the part of the operator, and to a limitation of liability even though the damages were occasioned by the fault or negligence of the operator, providing the incident giving rise thereto was "without the privity or knowledge of such owner." This was the effect of the holding in The 84-H, 2 Cir., 296 F. 427, certiorari denied 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867. On page 431 of 296 F., the court stated: "The whole doctrine of limitations of liability presupposes that a liability exists which is to be limited. If no liability exists there is nothing to limit. And in a proceeding to limit liability two duties are imposed upon the court. The first is to ascertain whether any liability exists. If it is found to exist the second duty arises, which is to ascertain whether the loss or damage was occasioned or incurred without the 'privity or knowledge' of the owner of the ship. If no liability is found to exist, the absence of all liability is to be decreed, and there the matter ends. If, on the other hand, liability is found and loss or damage is shown, and was not occasioned or incurred with 'privity or knowledge' of the shipowner, the limitation of liability should be decreed. (Citing cases.)"

As to the meaning of the words "privity or knowledge" as found in the statute, the court on the same page stated: "The privity or knowledge must be actual and not merely constructive. It involves a personal participation of the owner in some fault or act of negligence causing or contributing to the injury suffered. There must be some fault or negligence on his part or in which he in some way participates. (Citing cases.)"

In Petition of Canadian Pac. Ry. Co., D.C. 278 F. 180, 188, the court cited numerous cases for the statement, "Privity or knowledge, as used in the statute, imports actual knowledge causing or contributing to the loss or knowledge, or means of knowledge of a condition of things likely to produce or contribute to the loss without adopting proper means to prevent it."

In La Bourgogne, 210 U.S. 95, 122, 28 S.Ct. 664, 673, 52 L.Ed. 973, the court stated: "Without seeking presently to define the exact scope of the words 'privity and knowledge,' it is apparent from what has been said that it has been long since settled by this court that mere negligence, pure and simple, in and of itself does not necessarily establish the existence on the part of the owner of a vessel of privity and knowledge within the meaning of the statute."

In Petition of Liebler, D.C., 19 F.Supp. 829, at page 833, the court, after discussing and citing numerous cases dealing with the question of "privity or knowledge", allowed a petition for limitation and in so doing stated: "The petitioner did no act contributing to the injury. Petitioner did not personally participate in any fault or act of negligence contributing to the injury. Petitioner gave no direction with reference to the operation of the vessel. It appears from her testimony that she had no knowledge of the operation of the boat. Her husband to whom she intrusted the operation of the boat was experienced in its operation."

Applying these principles to the instant situation, petitioner is entitled to exoneration of all liability only if his minor son, Robert, was without fault or negligence. In such a situation, there is no liability and consequently no limitation to impose. On the other hand, if there was negligence or fault on the part of Robert, petitioner is entitled to a limitation of liability providing the incident giving rise to the damage was without "privity or knowledge" on his part.

■ We now return to the findings upon which claimants rely. The court found, "The actions of the petitioner and his son Robert Rautbord constituted the sole cause of this occurrence." Assuming that the meaning attributable to this finding is that the accident occurred as a result of the fault or negligence of the petitioner and his son, it is to be noted that neither this finding nor any other specifies the fault or negligence chargeable to Robert Rautbord. (We shall subsequently refer to findings directed at the petitioner.) It is neither claimed nor found that he was driving the boat at an excessive rate of speed or at a place in the river where it was not safe or where he was without a right to be. Of course, the claimant Henry E. Ehmann, Jr. was also where he had a right to be. After reading the testimony, we have come to the conclusion that it could have been found that there was fault or negligence on the part of the operator of the boat in that he failed to use ordinary care and prudence in ascertaining the presence of Henry E. Ehmann, Jr. It was daylight, with nothing to obstruct his vision, and it is no excuse that he looked and did not see what was before him and plainly visible. Of course, he could not see the claimant after the latter dived under the water, but it is reasonably inferable that he previously had ample opportunity to so do. Perhaps that is what the court had in mind in making the finding above quoted. We assume that such was the case and accept it as it relates to Robert Rautbord. The latter not being a party to this proceeding, what we have said in this respect is solely for the purpose of determining petitioner's liability, if any, and is without prejudice to the right of Robert Rautbord to contest a charge of negligence in any suit or proceeding against him.

■ Thus, the petitioner is not entitled to exoneration from damages done while the boat was being driven by his son, Robert. This leaves the question as to whether petitioner is entitled to a limitation of liability and this is dependent, as is shown by the authorities heretofore cited, on whether petitioner was at fault or negligent in permitting use of the boat by his son, Robert, or, in the words of the statute, did the incident giving rise to the damages claimed occur with the "privity or knowledge" of the petitioner? On this issue, the court found that "The accident did not occur without the privity or knowledge of the petitioner," that "Petitioner was at fault in permitting his 13½ year old son to operate a dangerous instrumentality," and that "In August, 1947, Robert Rautbord, because of his tender age, was not a competent, careful and capable operator of a vessel of the type he was operating at the time of the occurrence." The essence of

these findings is that petitioner was at fault because he permitted the operation of a dangerous instrumentality by his son, Robert, which in reality is a question of law rather than of fact.

Claimants in their answer asserted that Robert Rautbord was an inexperienced and incompetent youth of 13 or 14 years of age, who did not possess sufficient knowledge, experience and instruction to be permitted to operate the vessel in question. No evidence was introduced by claimants to support such a charge. The evidence introduced by petitioner clearly refuted it. And the court evidently gave credence to such testimony because, referring to Robert Rautbord, it found, "From the time he was 7 years old he operated motor boats of various types and received instruction in the operation of such vessels and the rules of navigation from his father, his brother, Clayton Rautbord, and from Loren Rothermel, a licensed pilot. He spent from 5 to 6½ hours a day operating motorboats of various types every day during the summer months for approximately six years prior to August 30, 1947," and "Prior to this occurrence he had had no previous accident of any kind while operating a motorboat of any type."

It is thus firmly established and found that Robert Rautbord was an experienced and thoroughly trained operator, and there was no reason for petitioner, his father, to think or believe otherwise. Is petitioner to be held liable on account of the tender age of Robert or because the boat was a dangerous instrumentality, as the court stated in its findings? There is no other basis in the record for finding or imputing fault or negligence to him. No authority is cited for the proposition that a parent is liable as a matter of law under such circumstances. In analogous situations it has uniformly been held that a parent is liable for injuries suffered by a third party only if the parent was negligent in entrusting his child with the particular instrumentality. Conversely, there is no negligence on the part of the parent where it is shown, as it is here, that the child is trained and capable of handling such instrumentality.

In Union Bank of Chicago v. Kalkhurst, 265 Ill.App. 254, it was sought to recover from the defendant for damages occasioned by his automobile which he had permitted to be driven by his daughter, 16½ years of age. The court pointed out that the daughter was experienced in the operation of automobiles and had never had any previous accident, and also that an automobile is not a dangerous instrumentality *per se*. The court, in denying liability, stated, 265 Ill.App., page 258: "The rule is now firmly established that an automobile is not so dangerous an agency as to make the owner liable for injuries caused by it regardless of the agency of the driver and that it is not dangerous *per se* (Arkin v. Page, 287 Ill. 420 [123 N.E. 30, 5 A.L.R. 216] ), and the owner who merely permits another to use it for his own purpose is not liable for the negligence of the person so using it. (White v. Seitz, 342 Ill. 266 [174 N.E. 371]; Andersen v. Byrnes, 344 Ill. 240 [176 N.E. 374].)"

In Milner v. Nelson, 340 Ill.App. 21, 91 N.E.2d 111, the court refused to hold as a matter of law that the defendant owners of a truck were liable for damages occasioned while the truck was being driven by a 15 year old boy. In Palm v. Ivorson, 117 Ill. App. 535, the court held that the father was not negligent as a matter of law in permitting his 12 year old son to have a shotgun, with which the plaintiff was injured. Again the court pointed out that the boy was acquainted with and experienced in the use of firearms, notwithstanding his tender age.

The point of these cases and others which could be cited is that the mere placing of an instrumentality in the hands of a minor child or permission for its use by such child is not negligence *per se*. If the child is experienced in the use of or is familiar with the instrumentality, the parent is not liable. On the other hand, a parent may be liable for negligence in permitting the use by a minor child of an instrumentality with which the latter is not familiar or is lacking in experience as to its operation.

540

Here, the petitioner thought that his son, Robert, was a thoroughly trained, careful and competent operator of a motor boat. The evidence leaves no doubt but that this opinion was justified, and the mere fact that Robert was of tender age or that the unfortunate accident in question ocurred neither proves nor tends to prove that petitioner was negligent or at fault. In other words, the incident giving rise to the damages was "without the privity or knowledge" of the petitioner. It follows that petitioner was entitled to have his liability limited to the value of the boat.

The order dismissing the petition is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.